## A. H. McDonough v. Mary and P. H. Cross.

1. An executor, with power to administer without control of the Probate
Court, for the purpose of partition, and with the consent of the devisees,
sold a tract of land on a credit of twelve months, giving a bond for title
upon the payment of the purchase money, the purchaser giving separate
notes for the proportional amount of the purchase money to each de-
visee interested in the land. Upon maturity of the notes one of the
holders obtained a judgment and order of sale against the purchaser, and
under same purchased the entire tract. *Held*, that such purchaser took
only such title as was held by the judgment debtor; and the purchase
money due the other devisees not having been paid, such purchaser took
only an interest in the land proportionate to that the note upon which
judgment was rendered bore to the entire purchase money.

2. A judgment against an executor with power to administer without control of the courts of probate binds only such assets as are in his hands, and a sale under such judgment of land which had been partitioned among the heirs prior to the suit upon which judgment was rendered was void and passed no title.

ON REHEARING.

3. It seems a reasonable if not necessary construction of wills authorizing executors to administer and settle estates independently of supervision and control of the probate jurisdiction of the courts, and where there are no terms of restriction upon their authority in the will, that they may do whatever is necessary for the full and complete settlement of the estate which they might do under the authority and order of the court if charged with the administration subject to its control by the will.

4. Such executors may sell property for the payment of debts of the estate, or the discharge of any other trust directly or exclusively committed to them by the will; but doubtful whether such executors can make partition of an estate, or sell land to effect a partition.

5. Such executors may determine when to surrender the estate to the heirs or devisees, free from any claim thereto for the purpose of administration; and upon such delivery of the estate to the devisees it ceases to be assets in the hands of the executors, but passes to the devisees, subject to the debts of the estate.

6. Under a judgment against such executors subsequent to the delivery of the estate to the devisees, the estate so delivered is not subject to execution, and a sale under such judgment, of such estate, would pass no title.

7. The delivery of property to the devisees, or the sale made by the executor, with consent and approval of all the devisees, for purpose of distribution, passed the estate from the hands of such executor, and thereafter such estate was not assets, and the sale under execution against the executor was void.

8. Neither the devisees, nor a purchaser from them, or the executor, are chargeable with a knowledge of the debts of the estate, or the means in the hands of the executor for their payment.

9. In the absence of anything from which the contrary inference should be drawn, it is presumed that an executor assuming the trust of administering without control of the probate court does not surrender it until he has discharged all the duties which he knows are imposed on him; the judgment, therefore, against the executor would be valid, and bind any assets in his hands.

10. The purchaser at executor's sale, under such valid judgment, of land which had passed to the possession of the devisees, and so taking no title, having discharged such valid judgment, is entitled to be subrogated to the rights of the creditor, and pursue the assets in the hands of the devisees.

11. The vendor's lien is an implied lien, a mere equity, incident to the contract for the sale of the land, if the purchase money be not secured otherwise; but if an express lien is retained, or other security taken, unless it clearly appear that the implied lien is also retained, it is to be taken as waived.

12. In case of an express lien or mortgage to secure the payment of different creditors, whose debts are due at the same time and are not by the mortgage or contract giving the lien placed on a different footing, neither of such creditors is entitled to a priority over the others, and in general all of such creditors are necessary parties in a suit to enforce the lien.

13. While, as a general rule, the diligent creditor may have advantage over others of equal standing otherwise, still the vendor's lien for the purchase money due one of several vendors for his undivided interest in the land sold can only attach to his own interest in the land, nor can it be enforced against the share of any of the other tenants in common holding a like security.

14. The holder of the one of several notes given to the several devisees for the share to each respectively (title bond only having been executed to the vendee), having taken possession, after maturity of the notes, of part of the land, could not be evicted by one of the other tenants in common, nor by one holding under proceedings to enforce the payment of one of the other notes against the land.

15. In an action by one claiming the whole tract of land, under proceedings by one of several devisees holding such notes, the other devisees, or those holding such notes given to such devisees, could properly intervene and set up their rights.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

*W. H. Morris*, for appellant.—The will, by its terms, not coming within the jurisdiction of the county court for administration, leaves W. J. Smith, the executor, a trustee merely to execute its powers outside of the court and under the law regulating ordinary trusts. (Langley v. Harris, 23 Texas, 564.)

It is true that the legal title by the death of B. H. Smith was cast on his legatees. It is equally true that the title thus vested is subject to the trust imposed by the will. The property descends to the legatees subject to the execution of the powers of the will. (1 Sugden on

Powers, marginal p. 232, cites Reid v. Underhill, 12 Barbour, 113.)

The fact that the executor and the legatees, by agreement, sold the land for a division merely of the proceeds among the latter, cannot weaken the force of the trust fixed by the terms of the will to first pay the debts of the testator; more especially when suit, at the time of the sale and before, was pending on the note of the testator, thereby charging all parties with notice of its existence. If a power be badly executed, it may, in many cases, be re-exercised in a valid manner. (1 Sugden on Powers, marginal p. 354.)

A court will not permit the negligence or accident of a trustee, or other circumstances, to disappoint the interests of those for whose benefit he is called upon to execute the trust. (Hill on Trustees, marginal p. 67.) The executor must follow the powers of the will. (1 Sugden on Powers, marginal p. 117.)

And the acts of the executor and legatees cannot revoke or suspend the power. (1 Sugden on Powers, marginal p. 45; Id., p. 49, 7th paragraph.)

The unauthorized sale of the land to M. L. Durham, as stated in the facts, did not impair the right of Earle to pursue the land in the hands of the executor for the satisfaction of his debt against the testator.

It is quite apparent that the executor neither sold nor intended to sell the land for the payment of Earle's debt. Fortunately for Earle, the act of 1866 (Paschal's Digest, Article 1371) afforded a direct remedy for just such a case. It provides that the executor might be sued, just as Earle sued him; and when judgment was obtained, it authorized it to be rendered just as it was rendered—that execution might issue, which was done, and the land sold at sheriff's sale to the appellant. This is the title on which he rests.

The appellees, Cross and wife, must recover, if at all,

on the strength of their own title.    Claiming under Durham, they have only such title as he had.    In the sale and division Mrs. Cross, as one of the legatees under the will, took one of the notes given by Durham to the executor on his purchase of the land.    Cross and wife obtained judgment on this note against Durham, and a decree to enforce the vendor's lien, and became the purchasers of the land at sheriff's sale under that decree, paying no money except the cost, but crediting a title under one thousand dollars on their judgment against Durham.

Thus it will be seen that Cross and wife appropriated to their own use this sum, while the debt of the testator remained unpaid, although directed by the will to be first paid.    On this purchase of Durham for his notes at twelve months, taking the executor's (Smith's) bond for title, not a dollar paid on the purchase notes, and the whole transaction in violation of the directions contained in the will, the appellees, Cross and wife, seek to eject McDonough, the appellant, from the land, he deriving title by a regular proceeding to judgment on a debt directed by the will to be first paid.

It must be kept in view, that the executor and the legatees acted with full notice of the existence of the debt of Earle against the estate; in any event, as privies in estate, they are charged with notice.

A purchaser at sheriff's sale, with notice of outstanding equities that existed against the property at the time the judgment was rendered, takes the property subject to such equities.    (Blankenship v. Douglas, 26 Texas, 225.)

Durham could not have recovered against executor Smith without payment of the notes given for the land. How can Cross and wife, claiming under him, occupy a better position ?    (Watkins v. Edwards, 23 Texas, 443 ; Mitchell v. Puckett, 23 Texas, 573.)

The legal conclusion follows, that the appellees, Cross and wife, holding by their purchase of the title of Durham merely, cannot thus maintain their action of trespass to try title in this case.

*Wm. Steadman* and *A. M. Jackson,* also for appellant.—
I. The executor had no power of sale, and his deed even could have conferred no title. But even if he had the power of sale, his title bond could have conveyed no title upon which an action of trespass to try title could have been maintained, in the absence of payment of the pur-chase money.

An equitable title, to support the action of trespass to try title, must be such an one as would entitle the plaintiff to maintain a bill for specific performance. (Miller v. Alexander, 8 Texas, 42.)

The asserted title of Mrs. Cross is not derived from the will of B. H. Smith, the testator. She was never entitled to anything under that will. Whatever pretense of right she may have is derived solely from the decree she ob-tained against Durham, the purchaser at the pretended executor's "sale for distribution." The utmost possible for that decree to accomplish was the sale of whatever interest Durham had in the land. And what interest did Durham have? He had never paid a dollar on his purchase of the land. No conveyance of the land had ever been made to him. He had executed his notes for the purchase money, payable twelve months after their date, and he held the executor's bond for title when all the notes should be paid. What title, then, or what interest, did Durham have in the land at the time of the decree against him in favor of Cross and wife, upon which alone they now stand? We assert most positively that he had no title whatever, and no interest authorizing him to call for a title. Even if there had been no debt against B. H. Smith's estate, the utmost claim that Durham had

was his right to pay up all the notes and interest, and thus entitle himself to a title. No act or conveyance of his could possibly have transferred to another any greater right than that, and even that right was precarious after the notes had matured, and liable at any moment to be extinguished by his vendors. Nor could the law and its instrumentalities, the courts and their process, transfer from Durham any other or greater right than he was possessed of.

But we may be asked, where was the title to the land, say, on the sixth of August, 1868, the day after it was bid off by Mrs. Cross? The answer is not difficult, when the facts are kept in view; it was still in the devisees of B. H. Smith's will. Nothing had then been done to divest them of it.

Surely no lawyer will, on a full understanding of this record, maintain that the so-called executor's "sale for distribution" divested the title out of the devisees, in whom, by the positive provision of our statute (Pas. Dig., Art. 1373), it was vested by Smith's will. For let it be conceded that a full and valid assent was given to that sale by each and all of the devisees, minors as well as adults, what difference could that make? That sale did not purport or import a transfer of the title until all of the purchase money notes should be paid. That so-called sale was a pure executory contract on both sides. No sort of a conveyance was made by the vendors, nor was any consideration paid by the vendee. That contract expressly stipulated that no title should pass while any of the purchase money remained unpaid. The assent of the devisees, therefore, was to an executory contract which expressly withheld the title until the occurrence of an event, which has never yet occurred, to-wit, the payment of all the purchase money. There never was an assent or a ratification, by any of the devisees, of or to a contract which could divest them of the title so

long as any of the purchase money remained unpaid; and as the purchase money never was paid by Durham, or by any one in his right or behalf, it is perfectly manifest that neither the legal nor equitable title of the devisees was affected by the so-called sale, or by their assent to or participation in it. And not having passed from them to Durham, it could never have passed from him to Mrs. Cross, either by his own transfer or by a judicial sale of his property. And thus it is demonstrated that the sheriff's sale of August 5, 1868, to Mr. Cross, left the title exactly where it was before, to-wit, in the devisees of B. H. Smith's will.

II. We next proceed to show that the title of the appellant, McDonough, defendant in the court below, was and is good and indefeasible against either the appellees or the intervenors.

All the parties litigant claim under B. H. Smith, deceased. There is no dispute that after his death, and on the probate of his will, in April, 1863, his title passed under our law to his devisees. (Pas. Dig., Art. 1373.) There is no dispute that his will appointed W. J. Smith as executor, nor that this executor assumed the trust; and, in fact, the present claims of the appellees, and also of the intervenors, are based upon the acts of this executor. Except for the purposes of inventory and probate, the estate and the executor were exempted by the will from the control or jurisdiction of the probate court. But they were not exempted, and could not have been exempted, from the law of the land. In 1863, when the title vested in B. H. Smith's devisees, a statute of this State was in full force, and still remains in full force, providing a legal remedy in all such cases for any person having a debt or claim against said estate. This statute is embodied in Article 1371 of Paschal's Digest. It was enacted on the first of January, 1862. The remedy it gave to a creditor of such an estate

was "by suit against the executor of said will, and when judgment is recovered against such executor, the execution shall run against the estate of such testator in the hands of such executor." And no condition whatever was attached to this remedy except that the executor could not be required to plead to the suit "until the expiration of twelve months from the date of the probate of such will."

No other "estate of such testator," Smith, was left by him or inventoried by his executor than the land now in controversy.

Such, then, being the attitude of Smith's estate in its relation to creditors, a suit for a debt of his was prosecuted to judgment against his executor at the Spring term, 1869, of the District Court of Rusk county. Execution followed, in conformity with the statute, and under it the land now in controversy was duly sold by the sheriff. McDonough, defendant below and appellant here, became the purchaser, and took the sheriff's deed as well as the possession of the land.

It cannot be denied that the land in controversy "went into the hands" of the executor on the probate of the will. Nor can it be denied that it went into his hands as assets of B. H. Smith's estate for the payment of his debts. The executor inventoried it as such, and the pretensions set up by the appellees and intervenors in this suit are directly predicated on his fiduciary control and possession of it. The estate which the devisees took under the will was in no way incompatible with the fact that the land was assets in the hands of the executor. Even if the devisees had ever got actual possession of the land, the executor could have recovered it from them for the payment of debts. (Paschal's Digest, Art. 1373.) This record, however, not only shows that the land was in the hands of the executor, but further shows that it never was in the hands of the devisees.

The estate of B. H. Smith, then, on the one hand, and Earle, its creditor, on the other hand, were in that precise *status* and in that exact relation to each other which brought them not only within the purview and spirit of the act of January 1, 1862 (Paschal's Digest, Art. 1371), but fully and clearly within its language and objects.

That statute expressly empowered Earle, the creditor, to bring his suit against the executor alone, and to have execution *de bonis testatoris*. That was exactly the course pursued by Earle. He recovered judgment against the executor, on which was issued an execution *de bonis testatoris*, and under it McDonough bought the land, paid for it, took the sheriff's deed, and now holds possession.

*J. H. Jones* and *Martin Casey*, for appellees.—The whole question in the case is, were Cross and wife entitled to the judgment they obtained?

In Lynch v. Elkes, 21 Texas, 230, it is decided, that where several notes, due at different times, are given for land, that land may be sold when the first note becomes due. The rights of parties cannot be affected by the time the notes become due, but by the vigilance of those seeking to enforce their liens. *Vigilantibus non dormientibus, sed leges subveniunt.*"

The presumption of law and equity must be, that after Mrs. Cross obtained her judgment and a decree to enforce her vendor's lien, at the sale of the land it brought its full value; and she being the best bidder, and crediting the amount of her bid on her judgment, obtained all the title to the land. *"Qui prior est in tempore, potior est in jure."*

This principle is well illustrated in Fitzsimmons v. Ogden, 2 Cond. U. S. R., 7 Cranch, 2-22. The syllabus of that case is: "He who has equal equity may acquire the legal estate, if he can, so as to protect his equity. Between merely equitable claimants, each having equal

equity, he who has the precedency in time has the advantage in right." This appears to be a case precisely in point.

But here a question arises, could Durham, under his title bond from the executor, shield himself against a trespasser?

Whatever title the executor had, passed to Durham by the title bond; that was an equitable title, which may be used offensively and by way of defense; otherwise, a purchaser with his title bond can have no security. Our decisions settle, that equitable titles may be given in evidence, and that title bonds are equitable titles. (Miller v. Alexander, 8 Texas, 42; Easterling v. Blythe, 7 Texas, 212; Neill v. Keese, 5 Texas, 23.)

Durham had the legal title also, for he was in possession; and as against the possessor on a sale by a sheriff, it is only necessary for the purchaser to prove possession. (Wilson v. Palmer, 18 Texas, 572.) So Mrs. Cross had an equitable lien on the land by her judgment, and by her purchase she obtained the legal title; and hence she has both law and equity to sustain her claim; and coming within the case of Fitzsimmons v. Ogden, 7 Cranch, 22, she has a title preclusive of all the other claimants. This principle is referred to by Story in his Equity Jurisprudence, Vol. 1, Sec. 64d, where he says, "that precedence in time will, under many circumstances, give an advantage or priority in right."

In the judgment against W. J. Smith, as executor, the land is condemned to sale to satisfy Earle's debt, without having made his heirs parties to that suit, which is contrary to our statutes and the decisions of the Supreme Court. (Barrett v. Barrett, 31 Texas, 347.) And since Earle's judgment condemning the land to sale, without having made B. H. Smith's heirs parties, is a nullity, McDonough's title by purchase under Earle's judgment is also a nullity.

*Long & Long*, for appellees, filed a supplemental brief of considerable length, but we omit that part of the argument which applies to the title of McDonough, because the court concurred with the appellees on that point. As to the rights of the intervenors, it was contended:

The question between the different intervenors is not without difficulty. The question may be stated about thus: Cross and wife, as guardians of a minor, and three intervenors, each hold notes of about the same size, given for the purchase of a tract of land to which they were entitled in common by devise. By way of dividing this land, it had been sold to one Durham on a credit, and he gave each claimant a separate note for his portion of the price, for which the law gave them respectively an equitable lien upon the land. One party—that is to say, Cross and wife—acting for the minor, enforced their lien for the purchase money by a decree and sale of the land, and became the purchasers of the same for the benefit of their ward, and received a sheriff's deed for the same. Two of the intervenors in this suit subsequently obtained similar judgments, and each of them, in turn, subjected the same land to sale under their respective decrees; and Durham, the first purchaser from the executor, becoming bankrupt, his assignee sold Durham's interest in the same land for the benefit of his creditors. Now the intervenors each claim the whole land in preference to Cross and wife, and in the alternative claim to hold each an equal undivided share in common with Cross and wife, and the question is, upon what legal principle or analogy can they maintain either of these alternatives?

As each of the intervenors sold and purchased the land subsequent to plaintiff's purchase, it would seem quite plain that they can have no fair pretense that either of them can have superior title, equitable or legal, to that of plaintiffs. Nor can there be any reasonable pretense for saying that they hold the land in common as against the

plaintiffs because they purchased at different times, under different decrees, and each took a separate deed to the whole land. Let it be remembered, that all these purchase money notes were negotiable, payable to bearer, and were held by different persons. We know of no rule forbidding each holder of these notes to proceed to enforce his lien upon the land by decree and sale, without regard to the course pursued by the holders of other similar notes. The case cited from 21 Texas, 230, is explicit on this point. Even if it be conceded that it would have been proper for Cross and wife to have made the holders of the other purchase money notes parties, so that they might have asserted their claim to a share of the purchase money, if they had any such claim, it by no means follows that the judgment in favor of Cross and wife was erroneous, much less null and void; nor can any pretense be set up from this circumstance for saying that the intervenors thereby acquired any title to the land, either in common or separately. The judgment of the court cannot be collaterally impeached, being a court of general jurisdiction, and there being no suggestion of any defect in its jurisdiction.

If it be assumed that the holders of all these purchase money notes had an equitable lien on the same land for the payment of each of the notes, it becomes material to consider what rights or interest was thereby conferred, by the existence of such lien, upon each holder of these notes. "A lien is not, in strictness, either a *jus in re* or *jus ad rem*, but is simply a right to possess and retain property until some charge attaching to it is paid or discharged," when applied to personal property, as laid down by Judge Story. (1 Equity Jurisprudence, Section 506.) As applied to land sold upon credit, it is nothing more nor less than an equitable right, upon having the debt ascertained by a judgment at law, to apply to a court of equity to have the land sold to satisfy such judgment.

In Texas the District Court, being both a court of law and a court of equity, renders a judgment as at law for the debt, and a decree as in equity to sell the land for its satisfaction. And this is all of it. If there be several purchase money notes, held by different persons, the right of each one must be independent of all others, and may be waived or enforced at the pleasure of each holder.

If, as in this case, the several notes are negotiable, the respective holders are not presumed or required in law to know who holds them or where they are. This conclusion results from the very nature of the thing, and could not be otherwise. Therefore, each holder has a right to apply to a court for such judgment and decree, and the court plainly has power or jurisdiction to render the same, which is final and conclusive, unless reversed upon appeal; and having jurisdiction to render such judgment and decree, it also has power to enforce the decree by sale and conveyance to the purchaser.

If the present intervenors desired to have a judgment and decree to enforce their lien, it was their right equally with the plaintiff to have instituted suit for that purpose, or perhaps they might then have intervened and obtained a decree that the proceeds of the sale, if insufficient to pay all the notes, should be paid *pro rata*. But their failure to take this course could not, by any means, oust the jurisdiction of the court to grant the relief claimed by plaintiffs. The plaintiffs' suit for the relief prayed for by them was *lis pendens*, or notice to all the world. "A subpœna served, and bill filed, is a *lis pendens* against all persons." (Cross on Lien, 140.)

If these suggestions be true, it follows that the petition of the intervenors, so far forth as it sets up title to the land under sheriff's deed to them respectively, only shows subsequent deeds in point of time to that of plaintiffs, and, of course, inferior and insufficient. And so far forth as said petition is to be regarded as a bill in equity

to set aside and annul the title of plaintiffs, derived from the judgment decree and sheriff's deed in pursuance thereof, it is totally without any merit or equity apparent upon its face. It seeks the relief without any allegation of either fraud, accident, or mistake, or any lack of jurisdiction in the District Court to render the decree upon which plaintiffs' title rests. Being demurred to in the court below for this obvious cause, it was dismissed as a proceeding in equity, and this was most strictly correct, as the court may see by inspecting the petition.   *   *

Cross and wife are not bound to look after the interest of intervenors, for they might have chosen to forego their right to resort to this lien. By their superior diligence—and courts of equity are said to favor diligence and abhor laches—the plaintiffs turned their equitable lien on this land into a legal title to the same, by an open and fair application to the proper tribunal for that purpose. Who shall gainsay their right to do so? They had a perfect right to pursue the course they did, and all the benefit thereby acquired must be respected by this court as having been legally and legitimately obtained.

Such is the rule as expressly laid down by Chief Justice Marshall in the case cited by my colleague, Fitzsimmons et al. v. Ogden et al., 2 Cranch, 2–22. (2 Cond. Rep., 395.) The equities of the plaintiffs and the intervenors may have been equal to the land ; yet the former had the right to buy up, if they could, the legal estate: Says the court in the case last cited : "Though the equities of the trustees and the Holland Company should be admitted to be equal, yet the latter have acquired another title to the subject in controversy which a court of equity will never disturb. They, or rather the trustees, have got the fruits of their execution, and have obtained the legal title to the land on which the judgment only gave them a lien. Having at least an equal equity with the trustees, it was perfectly justifiable in them to obtain a superi-

ority by buying the legal estate." The same familiar principle is well stated in 2 Washington C. C. R., 441, in these words : "Where the equity of each party is equal, . the court will not deprive one party of the advantage he may have gained by obtaining a legal estate in property which was promised as security for a debt due to each." (Philips v. Crammond.) Says Washington, J.: "The court will not take from the trustees the legal advantage which their vigilance has conferred upon them." .

This doctrine of vigilance is not only a sound maxim in equity derived from civil law, "*vigilantibus et non dormientibus leges subveniunt*," but equally of the common law. "The law aids those who are vigilant, and not those who sleep. (Brac., 175; 2 Burrell's Law Dic., 1040.) This principle is expressly laid down by this court in Morris v. Jay, decided in December, 1872. Two judgments were obtained against the same person on the same day. The land sold under one of the judgments in January gave full title, and a sale in April following, under the other judgment, conveyed no title.

WALKER, J.—We have no hesitation whatever in reversing the judgment in this case, but by the conduct of the parties some complications are presented which require examination and explanation from this court.

The property in controversy seems to be a valuable tract of land which belonged to the estate of B. H. Smith, who made his last will about the month of April, 1861. He appointed W. J. Smith executor of his will, providing for the payment of his debts, and devising the residue of his property to certain of his relatives, among whom are the parties to this suit.

The will was probated, and an inventory of the estate returned ; which being done, the will by its terms withdrew the estate from the further control of the probate court.

At the time of his death the testator was jointly bound with others in a debt to one Jordan, by note. Jordan transferred the note to Earle, who brought suit against all the parties.

B. H. Smith died pending the suit, and Earle dismissed as to him, taking a judgment against the other defendants; they, however, proving insolvent, Earle revived his suit against W. J. Smith, the executor.

But in the meantime, in 1864, the devisees consenting to the sale, or perhaps constituting W. J. Smith, the executor, their agent for that purpose, he sold the land in controversy to one Durham on a credit of twelve months, taking notes in such amounts as represented the individual shares of the devisees, and retaining the vendor's lien to secure the notes.

The notes were delivered to the devisees, and Durham took possession of the land. No deed was made, but a title bond was given which obligated Smith, the executor, to make Durham a deed on full payment of all the notes.

Willie, the minor son of Mrs. Cross, was entitled to the proceeds of one of the notes; his mother, acting for him, brought suit against Durham on this note, and prayed for a foreclosure of the vendor's lien; she obtained a judgment and decree accordingly, caused the land to be sold on execution, and she and her husband became the purchasers at a consideration greatly below the actual value of the land, and not even covering the amount of the note.

The question now presents itself, what did the appellees gain, or what title did they acquire by this sale, as against the devisees under the will of B. H. Smith, or his creditors? The answer is obvious. They sold and bought just what title Durham had, and nothing more; and at best he had but an inchoate title, which could only be perfected on payment of the whole of the purchase money, which has never been done.

This disposes of the pretended title of Mary and P. H. Cross, the appellees.

Let us now look after the title of the appellant, Mc-Donough. He is a purchaser at judicial sale, to whom, under all the circumstances, the maxim *caveat emptor* must apply.

Under Article 1371, W. H. Smith, being the executor of the independent will of B. H. Smith, could be sued by ·the creditors of the latter, and upon judgment, execution could run against the assets of the estate in his hands.

But was this land, in any proper sense, still in the hands of the executor? We think not; some four years or more had elapsed, Earle had dismissed his original suit on the Jordan note as to B. H. Smith, had taken a judgment against his co-obligors, and both the executor and devisees might well have supposed that "this debt had been extinguished or abandoned when the land was sold in 1864 to Durham."

But under Article 1373, Paschal's Digest, the estate of B. H. Smith immediately on his death vested in the devisees, and this statute expressly declares that the estate remains subject to the payment of debts in the hands of the devisees. But the title under which McDonough, the appellant, claims, comes through a sheriff's sale of this land, upon a judgment against W. J. Smith, the executor.

We are clearly of opinion that the land could in no legal sense be treated as assets in the hands of the executor, and the title is not affected by sale upon a judgment against him alone.

The creditor should have pursued the assets in the hands of the devisees, who are, in a legal sense, trustees for the use of creditors so long as any valid debt of their testator remains unpaid.

We do not think that this case is affected by the fact that some of the devisees were minors at the date of the

sale to Durham; the legal title to the land still remains in them, in that proportion, share and share, by which they take under the will.

We must not be understood in this opinion as setting aside the judgment under which the appellant claims title—that may be valid; and if so, it should be paid in full by the devisees, by which means they will relieve the land from the burdens of the trust.

Durham having failed to pay for the land, and not being entitled to specific performance, the devisees may have his title bond canceled, the land partitioned or sold and the money divided.

Under the view we take of this case, the judgment of the District Court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

Opinion delivered September 8, 1873.

A rehearing was granted.

ON REHEARING.

*Long & Long*, for appellees.—It will appear from the opinion of the court in this cause that two principal questions arose and were decided by the court, by which decision it was held that neither appellant, McDonough, nor appellees, Cross and wife, were entitled to the land sued for. In effect, the court held, that Cross and wife (or rather Willie Smith, their ward,) owned an interest in common with the two intervenors and another party in the land.

If the court was right in thus placing the title in Willie Smith as a tenant in common with the intervenors; it erred in failing to allow him (or his guardians, Cross and wife, for him,) to recover the land from the appellant, McDonough, a stranger to the title. "One tenant in com-

mon can sustain 'trespass to try title' against a stranger."
(Croft v. Rains, 10 Texas, 520.)

"We have heretofore decided that one tenant in com-
mon may maintain an action of 'trespass to try title'
against a stranger." (Watrous v. McGrew, 16 Texas, 506.)

If the partition had been invalid, still the decree, with-
out partition, vested in the "plaintiff an undivided inter-
est in common with the original grantee, and that was
sufficient to entitle him to maintain an action against the
defendant." "We have heretofore decided that one ten-
ant in common may maintain an action of trespass to try
title against a stranger." · (Dyer v. Sullivan, 18 Texas,
767.)      *      *      *      *      *      *      *

Appellant labors to show, what we have never pretended
to deny, that this land, in the hands of the legatees, was
liable to pay any debts of the testator, for the statute ex-
pressly so declares. (Article 1373, Paschal's Digest.)
But the question is, can this land be thus subjected to sale
by any proceedings to which said legatees are not made
parties? We suppose it to be too elementary and famil-
iar a principle of law to require authority, that as to
these legatees (in whom the statute just cited vests the
title to the land, both legal 'and equitable), the decree in
Earle's favor was and is totally inoperative and void. If
the opinion of the court be correct, that the sale by Cross
and wife of this land in satisfaction of their ward's share
of the purchase money due from Durham did not vest
them with the whole title or interest in the land in trust
for Willie Smith, their ward, then indeed it would follow,
as a necessary consequence, that the title or interest re-
mained in all the legatees under the will, just as it did be-
fore this sale to Durham.

Therefore it would seem to be plain that the land, after
the sale to Durham by the executor as the agent of the
legatees, or as executor under the will, could not legally
be sold as assets in the hands of the executor. The land

was not then in his hands, for he had parted with the possession by his contract with Durham. And we may here suggest that precisely because this was the legal status of the case, the statute very wisely gives the creditor a right of action against the legatee, upon whom the law has cast the title to the same. This action against the heirs was commenced by Earle, but was dismissed for some cause unknown, and we are left to conjecture whether this dismissal was caused by ignorance of the provisions of the law, or because it was feared that the heirs might have a valid defense, which it was deemed most prudent to avoid by only suing a party who no longer had any interest in the matter, having nearly four years previously yielded up possession of the land and fully performed his whole trust. And in this connection let it be remembered that when this executor, as agent of the legatees, upon whom the law had cast the title, parted with its possession, he was justified in supposing there was no such debt in existence, for Earle had then dismissed his suit against the estate, after the death of the testator, and had never demanded or in any way given notice of his intention to revive the same.

The executor, therefore, must be considered as having yielded up the possession and control of this land in good faith, in accordance with law, and upon perfectly sound reason. A creditor of an estate can never rightfully obtain a decree to sell this land until the legatees are made parties to the suit, and have a right to contest the validity of the debt sought to be enforced by its sale. Whether the legatees in this instance were not made parties to Earle's suit, through ignorance or through fraud, can make no difference, for it is not lawful in any case to decree the sale of land without first giving the owner of it his day in court. The decree is simply void as to these legatees as such, and as to Cross and wife as guardians of Willie Smith, who had purchased the same land

nearly two years previously, under the decree for purchase money.

Counsel for McDonough also labor to prove that there is and was no statute of four years limitation to bar the right of Earle's action in the case. Certainly, we never supposed there was any such statute of limitation. On the contrary, we contend, that after the sale of the land to Durham, and after the land had passed out of the control of the executor, no suit or judgment against him could bind the property as assets in his hands to be administered. In our brief it was mentioned, that Earle's decree was obtained about four years after this change of possession of the land, because the fact was so, and not because the right existed after that event, but was barred by the lapse of four years.

It is also contended, that even if it be true that the court could not lawfully decree the sale of this land specifically, as was done in this case, yet that the prayer for the sale of this specific land was unnecessary, and might have been rightfully refused by the court, and only a judgment rendered against the executor for the money, to be paid *de bonis testatoris*, and that the law would have obliged the sheriff to have levied upon and sold the same as assets in the hands of the executor to be administered, although the same had been sold three years before. This position looks very much like begging the question; for if it were true, which it is not, still it would not mend the matter, because the decree directed the sale of this particular land without the legatees (in whom the title had vested) being made parties before the court.

It is also contended, that since the passage of the act of 1862 (Articles 1372, 1373, Paschal's Digest), a creditor cannot sue the heirs or legatees of a testator or intestate after the estate has been distributed to them. The same brief declares that the case cited by us, of Payne v. Murchison, 37 Texas, is not an instance of the kind. Having

argued that case in this court, we are prepared to state the brief history of the same. A suit was brought in the Federal court against the administrator for the debt, who pleaded that the administration was closed, and that he had distributed all the assets in his hands to the heirs. This plea was sustained upon demurrer, and the case abated. A suit was then instituted in the State court against the heirs, and the debt recovered. After appeal to this court the judgment was affirmed. It may be true that the counsel who conducted the defense in both courts (Terrell & Walker) did not deny the right to sue the heirs after the assets came to their hands, provided they were sued in proper time and manner. But this circumstance rather adds to the weight of this case than otherwise. Indeed, we feel authorized to state that such is the constant practice in this State, and that we have not, before the present case, heard any doubts expressed on the point. Indeed, the words of the statute are too plain to admit of serious doubt that the assets may leave the hands of the executor or administrator and be liable in the hands of the heirs or legatees. "Or any of the creditors may sue the distributees, but no one of them shall be liable beyond his just proportion, according to the estate he may have received in distribution." (Article 1372, Paschal's Digest; Reynolds v. McFadden, 36 Texas, 129.) How can this liability be established except by the decree or judgment of a court, in a suit for the purpose brought against the legatees? So much for McDonough's title under this decree.

But it is said, on behalf of McDonough, that even if his title be otherwise insufficient, he is the owner and holder of one of the purchase money notes, and thereby stands on as high equitable grounds as Cross and wife, or their ward, Willie Smith, and that by virtue of that equity he has a right to remain in possession of the land as against Cross and wife or Willie Smith. If this assertion be true

in fact, and we think there is not sufficient proof of this fact, certainly the note claimed by him to be so held and owned has not been produced in evidence; nor does it appear when he purchased the same, if he ever did so. Still, we contend that his title to the land is in nowise strengthened by this circumstance. The holder and owner of a purchase money note for land has no lien on the land for its payment, but only an equitable right to acquire a lien by filing a bill to enforce that lien. Just as an attaching creditor has no lien on the property of his debtor until he institutes legal proceedings for the purpose of acquiring such lien.

After an elaborate and exhaustive review of all the cases, both English and American, on this subject, Hare & Wallace, in their learned notes to 1 Leading Cases in Equity, page 279, thus sum up the doctrine of lien for purchase money:

"The true nature of the claim appears to be this: It had its origin in a country where lands were not liable— both during and after the life of the debtor—for all personal obligations indiscriminately, including debts of simple contract; and it seems to be an original and natural equity that a creditor, whose debt was the consideration of the land, should, by virtue of that consideration, be allowed to charge the land upon failure of personal assets. It is not a lien until a bill has been filed to assert it; before that is done it is a mere equity or capacity to acquire a lien and to have satisfaction of it. When a bill is filed it becomes a specific lien. The equity dates back, no doubt, to the time of the conveyance and to the origin of the debt. As soon as the debt for the purchase money exists, though to be paid *in futuro*, the equity to come upon the land attaches to it. Wherefore it prevails against dower and all other estates which the law considers as in privity with that of the vendee. It prevails against all who take with notice, actual or legal, for all

such persons are considered as standing in the situation of the vendee. In all such cases the dispute is between the vendor on the one hand, and the vendee and his representatives on the other. But when subsequent lien creditors intervene, the contest is no longer between the vendor and vendee; it is with third persons contending for the estate. It depends no longer upon the equity of one party as against the vendee and those in privity with him. It depends upon the relations, rights and equities of the disputants in comparison with one another. If this be a correct view of the nature of the vendor's claim, the question is at an end. Lien creditors will supplant one who, though he had a right in equity to charge the land, through his own laches and default failed to secure a lien. Lien creditors are entitled to the whole estate of their debtor, subject only to prior liens, legal or equitable." (Leading Cases in Equity, 279, 280.)

This being the law, it follows that Cross and wife, as guardians for Willie Smith, having filed their bill for the purpose, obtained a lien for his purchase money note; and no other such bill having been filed by the holders of any of the other three purchase money notes, he had a right to sell the whole land for the satisfaction of his lien so acquired; not only as to McDonough, if he then held the note he now claims to own and hold, but equally as to both the intervenors. It follows, as a consequence, therefore, that as Cross and wife first filed a bill to obtain a lien on said land, they had a perfect right to sell the whole land for its satisfaction, and that the holders of the other purchase money notes (the said intervenors and McDonough) have lost their rights to obtain such lien by their own laches and want of vigilance. Thus we see that the doctrine of vigilance, as old as it is salutary, at this day remains in as full vigor as when originally announced in the civil and common law. It is a principle resting upon sound reason and morals and good public

policy, and may not be disregarded by the courts either of law or equity.

The position contended for by appellant, and indeed sustained by the court, that Cross and wife only sold such interest in this land as Durham at that time owned, is plainly contradicted by the petition of Cross and wife, and by the words of the decree. The petition claims a judgment as at law for the money due on the note, and for a decree as in equity for the sale of this particular tract of land, by metes and bounds, for its satisfaction, alleging the debt to be for the purchase money of this particular land. This was but an ordinary exercise of the legal and equitable jurisdiction of the District Court. And the suggestion that the decree was void, because the intervenors were not made parties, is absolutely absurd, when it is considered that the holders of the other notes had no lien upon the land or trust of any kind, and that the plaintiffs were only exercising their rights to use more diligence than others who were equally entitled to file a bill to claim such lien. In the language of the authorities just quoted, Cross and wife thus acquired a lien, and therefore will supplant one "who, though he had a right in equity to charge the land, through his own laches and default failed to secure a lien."

Precisely because plaintiffs had a right to secure this advantage, by superior vigilance, and were in consequence thereof entitled to sell the whole land for their debt, intervenors were not made parties.

Plaintiffs were not bound to do anything for the advantage of these intervenors, even if making them parties defendant would have had that effect, which certainly it would not. Plaintiffs had filed a bill claiming this lien, and had thereby acquired it. To have made these intervenors parties defendant would not have given them a lien. This could only have been acquired by filing a bill and setting up their claim therefor. Their laches

had deprived them of any such right, except as holding an equitable right to acquire a lien upon any surplus which might remain, after the satisfaction of plaintiffs' lien, already acquired by first filing their bill.

But even if making them parties defendant would have placed them upon an equal footing with the plaintiffs, and have deprived plaintiffs of all superiority, on account of filing their bill to acquire a prior lien, just as attachment creditors seek to be first in obtaining a lien, it would be still more absurd to hold that plaintiffs were bound to do themselves this injury.   As already suggested in our former brief, the plaintiffs could not know, and were not in law bound to know, who were the owners and holders of these negotiable notes, one of which, it now appears, had been negotiated, as all might have been, or they might have been paid and otherwise discharged.   This sale therefore to Cross and wife was neither a judgment as at law, and execution thereon against Durham, nor was it a specific decree to sell Durham's interest in this particular land, as assumed by the argument on the other side; but it was a decree by a court of competent jurisdiction to sell this particular piece or parcel of land to satisfy a debt, for which a judgment had been rendered—a lien prior to all others, having been previously obtained by first filing a bill claiming the same.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by Mary Cross and her husband, P. H. Cross, the appellees, against A. H. McDonough, the appellant, to recover a tract of land which belonged to B. H. Smith previous to his death.   The other appellants intervened, and claimed the land in their own right, or such interest in it or its proceeds as they might be found by a decree of the court to be entitled to.

As the court below sustained the exception of the appellant, McDonough, to so much of the petitions of the

intervenors as sought to set up and have adjudicated the respective equities of the parties, and refused to consider it in any other character than an action of trespass to try title, evidently the judgment must be reversed, unless appellees were entitled to a judgment on the sufficiency of their own title, whatever may have been the defects in that of McDonough.

Several of the questions which have been discussed during the progress of the cause are somewhat novel and not altogether free from difficulty. Their solution depends mainly upon the provisions of the will of said Smith, the action of the parties interested in the settlement of his estate, and proper construction in connection therewith of the statute authorizing wills providing for the settlement of estates without the supervision and control of the courts. (Paschal's Digest, Article 1371.)

The plaintiffs below, Cross and wife, and the intervenors, claim as devisees, or in right of devisees in said will, while McDonough claims through a creditor of the estate, and also as subrogated to the interest of one of the devisees. And as the rights of the creditors of decedents, if duly and properly enforced, are superior to those of his heirs or devisees, there can be no question, unless there has been a failure of the creditor, through whom McDonough claims to have acquired his title, to avail himself in due time of the remedies provided by law for his protection, that neither plaintiffs nor intervenors are entitled to a judgment against him. It is insisted, however, by the appellees, that the creditor, Earle, under whom appellant, McDonough, claims, did not attempt to enforce his demand against the estate until long after administration upon it had closed, or at least till long after the land in controversy in this suit had ceased to be assets of the estate of the testator in the hands of the executor.

The will of the testator, Smith, was duly probated on the eleventh of April, 1863. But previous to his death

suit had been brought by Earle against the testator and others, and was then pending in the District Court of Rusk county. The executor, who was one of the devisees named in the will, was a defendant in this suit, and was, consequently, fully advised of the existence of Earle's debt as a claim against the estate, and that it should have been paid before the devisees named in the will could legally claim a distribution of the property of the estate. Yet the record shows, that while this suit was pending, and before its dismissal or abatement as to the testator had been entered upon the record, the executor, with the consent of the devisees, and, as it appears from the evidence adduced in the trial, for the purpose of a distribution among them, sold the property in controversy at public sale to one Durham, upon a credit of twelve months, the executor executing to him a bond for title on the payment of the purchase money, for which he gave the joint and several notes of himself and two other parties, payable to the executor or bearer, for the respective amounts to which each of the devisees were entitled. It further appears that the devisees, in person or by their guardians, were all present at said sale, and advised and consented to the same, and that it was made because the land was not susceptible of partition. After the sale, the notes given by the purchaser were delivered by the executor to the devisees, or their guardians, each of whom thereupon executed to him a receipt for all of their interest in said estate; and subsequently thereto he did no act as the executor of said estate. We may as well here state, that subsequently to the delivery of these notes to the devisees, and after the purchaser, Durham, was in default in their payment, the creditor, Earle, suggested the death of said Smith, and in an amended petition alleged the execution and probate of his will, charged that all of his estate had been distributed among the devisees, and prayed that they should be made parties and cited

to answer, etc. This does not appear, however, to have been done; and in 1868, believing his debt could be made out of the other parties, his suit was dismissed as to them, and judgment went against the original surviving defendants, whose estates ultimately proved to be insolvent.

On this state of facts, it was insisted by appellant, McDonough, that the sale of land was absolutely void for want of authority in the will authorizing its sale by the executor for the purpose of distribution. On the other hand, it is urged that the will authorizes the executor to carry out its provisions; and as the land could not be partitioned without the sale, the will must be held as conferring upon the executor the power of making the sale for this purpose. It seems a reasonable, if not a necessary, construction of wills of this character, that the executor, when authorized to administer and settle estates independently of the supervision and control of the probate jurisdiction of the court, and where there are no terms of restriction upon his authority contained in the will, may do whatever is necessary for the full and complete settlement of the estate which he might do under the authority and order of the court if he was charged with the administration subject to its control by the will. We cannot, therefore, think there is any doubt that the executor may, without express authority, sell the property for the payment of the debts of the estate, or the discharge of any other trust which is directly or exclusively committed to him by the will. Whether the sale of the land of the estate for distribution, even where not susceptible of partition, is a trust of this character need not now be determined. If the estate was being administered under the direction of the court, the executor would not partition the land if it could be divided consistently with the interest of the devisees; nor would the determination of the question of its susceptibility of division be entrusted to him by the court, and we do not clearly perceive that it

is one of his necessary duties in distributing the estate. It can hardly be thought the executor is authorized by such a will to change the devise of the testator from an un-divided part of the estate into a specific part thereof, se-lected and designated by him at his mere will and pleas-ure, especially when he is one of the devisees among whom it is to be partitioned. Nor do we see that the set-tlement of the estate requires that he shall determine for the devisees whether they shall accept the money value of their interest in the land devised, or an undivided in-terest in the land itself.

But if it is conceded the executor under the will in this case was not authorized thereby to sell the land, we do not think it follows that the sale here in question was not valid and binding. It is certainly within the authority conferred upon the executor, if no specific directions are contained in the will, whether the will is being adminis-tered under the supervision of the court or not, to deter-mine when the devisees may take and hold the property devised, free from any claim of the executor thereto, for the purposes of administration. And if the executor, as the representative of the estate, acquiesces in the right of the devisees to the possession and enjoyment of the prop-erty devised, and the possession of it is delivered to them, it cannot be subsequently insisted that the devised proper-ty is still part of the estate of the testator in the hands of the executor. Unquestionably the devisees take the prop-erty subject to the right of the creditors to call upon them to contribute to the payment of the debts of the testator, if the executor fails to discharge them, or the property in their hands may, by a proper proceeding, be charged with their payment. And it may be, if the executor in fraud of the right of creditors has passed the estate com-mitted to his charge out of his control, he may have made himself personally liable to the creditors. But still it must be admitted an ordinary judgment against

him in his representative character will not authorize the levy of an execution upon the property of the estate after he has ceased to be executor, or upon property which has passed from his hands as such executor, although in the proper discharge of his duties he should have retained it in his hands for the payment of the debts of the estate.

It may be insisted that it opens a wide door for fraud upon creditors, if executors under such wills as are here in question may transfer the property of estates to the heirs or devisees before all the obligations of the estate have been discharged. It must be remembered, however, ample security is provided by the statute for creditors as well as others interested in the estate, if they are unwilling to risk its administration by the executor as provided by the will. And if there are evils growing out of or necessarily incident to such administrations, they are to be corrected by legislative interposition, and not by judicial interpolation.

It follows from these propositions, unless the sale of the land in controversy by the executor was an absolute nullity, its subsequent sale under the execution against the executor in favor of the judgment creditor Earle, and the purchase of it by McDonough, was void. It certainly could not be seriously insisted that an executor under such a will as this could under no circumstances consent to the devisees taking the property devised prior to the discharge of all the debts of the estate and its final settlement. If not, how can any one else complain, if the devisees are satisfied that the executor exceeded his authority in the manner or form in which he has dealt with or conveyed to the devisees the property devised to them by the will? The title to the property vested in the devisees immediately on the death of the testator, subject to being divested by a sale by the executor for the purposes of administration. But neither the devisees nor

a purchaser from them, or the executor, is charged with a knowledge of the debts or liabilities of the estate, or the means in the executor's hands for their payment. If not, the delivery of the property to the devisees, or its sale for the purpose of distribution among them, certainly passes it out of the hands of the executor in contemplation of law as well as in fact. And if, as has been insisted, there is any defect in the authority of the executor to make the sale for the purpose of partition, surely the parties in whom the legal title was vested, and for whose benefit it was made, could consent to it, and their recognition of the power and authority of the executor to make the sale estops and concludes them from subsequently denying it to the injury of any one acting upon the faith of their recognition of it. It appears from the evidence that the sale of the executor was made with the consent and advice of the devisees, all of whom, either in person or by their guardians, were present at and ratified it, and received from the executor their distributive shares of the amount thereof, and were consequently, from any thing appearing in the case as now presented, bound by it. (Millican v. Millican, 24 Texas, 426.)

It also appears from the record that the creditor, Earle, must have been informed of the sale and the distribution of the notes given for the purchase money among the devisees; for, some two years afterwards, he amended the petition in his original suit, and alleged that all of the property of the estate had been distributed among the devisees, and asked to make them parties, etc. But this was never done. Believing the original parties who were in court to be solvent, and who, for aught that appears in the record, may, as among themselves, have been the principal debtors, he discontinued his suit as to the estate of the testator and the devisees, and made no complaint of the sale of the land or the distribution of the notes given to the executor by the purchaser until some four

years afterwards. It is true, the purchaser was then in default in the payment of his notes; and we think it also true, the creditor of the testator was authorized to treat the executor as still the representative of the estate. No authorized act had been done by him indicating that he had abandoned or surrendered the trust conferred upon him by the will. In the absence of anything from which the contrary inference should be drawn, it must be supposed that a party assuming a trust of this kind has not surrendered it until he had discharged all the duties which he knows are imposed upon him. Among these duties of the executor was the settlement of the debts and liabilities of the estate, and the fulfillment and performance of the contracts entered into by him in his representative character. The debt to Earle he knew was unpaid, though he may have hoped and believed at the time the land was sold that the estate of his testator would never be called upon to pay it; and with the consent of the devisees he had obligated himself, in his representative character, to execute to the purchaser a deed for the land on the payment of the notes given by him for the purchase money.

At this stage of the proceedings for the settlement of the estate, the status of the parties interested in it was as follows: Durham, the purchaser, was in possession of the land under an executory contract, upon which he was in default. The notes given for the purchase money had been distributed among the devisees in whom the legal title for their respective purparts vested on the death of the testator. They held, therefore, the superior and better title until the purchase money was paid, and could enforce its payment by a personal action on the notes against the makers, or by an action for the recovery of the land on their superior title, against the purchaser, or any one holding under him, or by a proceeding to enforce the lien which the contract in legal effect gave them as a

security for its fulfillment; or the devisees, or their vendors, might by entry have annulled the contract—these several remedies being subject, however, to such equitable defenses as the purchaser, in view of all the facts of the case, might be entitled to assert. The executor, if not by the authority conferred upon him by the will, by the construction given it by the devisees, and the terms of the contract for the sale of the land, was still the representative of the estate, and as such authorized to execute a deed to the purchaser on payment of the notes. And as he was still authorized to represent the estate, the judgment against him in Earle's favor was valid, and could have been satisfied by a levy of execution upon the estate of the testator, if any property or effects belonging to it, upon which an execution could be levied, remained in his hands; or Earle, as the judgment creditor of the estate, could have enforced payment of the amount due him by contribution from the devisees; or, by a proceeding in which all the parties in interest were before the court, he could have subjected the land or the unpaid purchase money due the devisees to its payment. But as the land, as well as the notes given for it, had passed out of the hands of the executor, and the extent of his authority as to it was merely to execute a deed when the purchase money was paid, or possibly to enforce, for the benefit of the holders of the notes, the lien upon the land reserved by the character of title given to the purchaser, there was evidently nothing in his hands on which an execution against the executor could be levied. It consequently follows, that appellant, McDonough, acquired no title or interest in the land by his purchase at the execution sale. As he discharged, however, a valid judgment debt against the estate, which was a charge against the devisees, we think he was subrogated to the rights of the judgment creditor, and he could, by the proper presentation of his rights, have subjected

the land to payment of the judgment in preference to any claim upon it by the devisees or their legal representatives.

But if McDonough acquired no title to the land by his purchase under Earle's judgment, we think it quite evident, also, that neither the plaintiffs, Cross and wife, nor the intervenors were entitled to a judgment to eject him from the entire land. Cross and wife brought suit against Durham on one of the notes (as it has been argued, for the benefit of one of the devisees, though the record shows that the suit was brought as the legal representatives of the father of the devisee, instead of the devisee himself), and asked for a judgment to enforce a vendor's lien. It may be observed, however, that strictly speaking there was no such lien to secure the payment of their note. The vendor's lien is an implied lien, a mere equity, incident to the contract for the sale of the land, if the purchase money is not otherwise secured. But if an express lien is retained, or other security is taken, unless it clearly appear that the implied lien is also retained, it is to be regarded as waived. In this case the purchaser gave personal security, and the vendor also retained the legal title. But whether the lien Cross and wife sought to enforce for the payment of the note upon which they sued is considered as an expressed or implied lien, in view of the facts of this case we think there would be no substantial difference in the rights acquired by their purchase of the land under their judgment, even admitting, as is argued for them, that they purchased and were now suing for the land for and on behalf of the devisee for whom it is said Mrs. Cross is guardian. In cases of express lien or mortgage to secure the payment of different creditors whose debts are due at the same time, and are not by the mortgage or contract giving the lien placed on a different footing, it is unquestionably well settled that neither of the creditors are entitled to a priority or preference over the others.

And all of the creditors, unless the peculiar facts excuse a departure from the rule, are necessary parties to a suit to enforce the lien.

Certainly one of the creditors cannot, merely by a suit in his own behalf, seize upon and appropriate to his own benefit the entire security or trust fund. Though in some cases it has been held, as the vendor's lien not being a matter of contract, but an incident of the contract by which a lien may be acquired by filing a bill in equity to charge the land with it, the advantage of it will be secured by the creditor who entitles himself to the favor of a court of equity by his superior diligence. Still it must be remembered that it is a mere equitable right, and courts of equity will deal with or dispose of each particular case according to its facts and circumstances, so as to do equity to all parties. And though as a general rule the most diligent in seeking to avail himself of his equitable security, if he has an equal equity with the more dilatory, in the entire estate, will be ordinarily most favored, there is no principle of law or equity upon which this mere equitable lien for the purchase money due one of the vendors for his undivided interest in the land sold can be applied to the undivided interest of another tenant in common so as to deprive him of a like security to the extent of his interest in the land in the sale of which they have joined.

In this case the devisees were tenants in common, and although the execution sold the entire land, yet appellées insist this was done at the instance of all of the devisees, and for the purpose of partition, and separate notes were at the time of the sale given to each of them for their portions of the amount for which the land sold. Under these circumstances the lien for the payment of the notes, whatever may be its character, must be regarded as a security in favor of each of them to the extent of their respective interest in the land.

It follows, therefore, that Cross and wife, if their purchase was in right of the devisee of whom she is the guardian, extinguished Durham's equitable title to the extent of his interest in the land, and got Durham's equitable title to the shares of the other devisees, subject to the payment of the amounts due on the other purchase money notes. And the holders of them could avail themselves of either of the remedies we have heretofore indicated for their collection. This seems to have been done, or attempted at least, by a portion of them.

The appellant, McDonough, even before the purchase by Cross and wife, as the holder of one of the notes, had taken possession of the land, with the assent of the purchaser, and to that extent had the superior title, and might have compelled the executor to make him a deed for the undivided part to which he had thus acquired an equitable title. Consequently, although Mrs. Cross may have had the legal title to one share in the land, and as a tenant in common might recover the whole of it from a stranger, the judgment in favor of appellees for the entire tract was erroneous.

As to the intervenors, it is only necessary to add, that although it appears from the record that the judgment under which they claim gives them no right to the land, or any part of it, because the parties against whom their suits were brought neither held nor claimed any interest whatever in it, yet, as devisees or as equitable owners under some of them, they were authorized to have intervened and set up their rights. This they seem to have attempted, though in a very imperfect and defective manner. But the judgment must be reversed for the reasons already indicated.

Although a jury was waived and the cause submitted to the court, as we believe it necessary for the proper determination of the cause that it should be remanded to the District Court, where all the parties may have an oppor-

tunity to amend their pleadings, we deem it unnecessary
to make further comment upon them.    The judgment is
reversed and the cause remanded.

REVERSED AND REMANDED.