

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HIBERNIA ENERGY III, LLC, | § | No. 08-21-00092-CV |
| Appellant, | § | Appeal from the |
| v. | § | 112th Judicial District Court |
| FERAE NATURAE, LLC, | § | of Reagan County, Texas |
| Appellee. | § | (TC# CV02322) |

## **O P I N I O N**

The genesis of this case is a 1997 judgment obtained by original judgment creditors against two individuals (the original judgment debtors). The original judgment creditors filed an abstract of the judgment in various Texas counties, including Reagan County, where the original judgment debtors had an interest in a mineral lease, thereby creating a judgment lien on that lease. Through a series of transactions, Appellant Hibernia Energy III, LLC (Hibernia) and its co-defendant at trial, TRP Midland, LLC (TRP) had acquired the original judgment debtors' interests in that lease. In turn, Appellee Ferae Naturae, LLC (Ferae) was assigned the judgment lien that encumbered the lease. Ferae then filed suit against Hibernia and TRP to foreclose on the lien. The trial court granted Ferae's motion for summary judgment, entered a final judgment foreclosing the lien, and issued an order of sale, directing the sale of both Hibernia and TRP's interests in the lease. Both Hibernia

and TRP appealed, but TRP has since resolved its dispute with Ferae and is no longer a party to the appeal.

In its appeal, Hibernia contends that the trial court erred in granting summary judgment. In addition, Hibernia contends that the trial court's order of sale incorrectly described the mineral interests subject to the lien, and mistakenly included a working interest in the lease that was not subject to the lien. Although we disagree with the bulk of Hibernia's arguments, and affirm the trial court's final judgment foreclosing the judgment lien, we remand this matter to the trial court to modify the order of sale: (1) to address how the order must be modified given TRP's settlement with Ferae; (2) to ensure that the relief set forth in the order corresponds with the relief that Ferae requested in its pleadings; and (3) to ensure that the individual judgment debtors are given the proper credits for the proceeds from the sale of the lease that corresponds with their respective interests.[1]

## I. FACTUAL BACKGROUND

### A. The Underlying Reformed Judgment

Following a jury trial in 1997, a group of plaintiffs, including Patricia Love Stephens (Patricia) and other affiliated individuals (collectively, the Stephens Entities), obtained a money judgment against two brothers, Frank W. Cass (Frank), and Michael L. Cass (Michael) for breach of contract, conversion, and fraud. The trial court's 1997 final judgment awarded substantial actual and punitive damages against both Frank and Michael.

On appeal, we at first upheld the jury's verdict and its award of damages, rejecting all the Casses' claims of error; the Texas Supreme Court denied a petition for review. *Cass v. Stephens*,

---

[1] Hibernia and Ferae are both unhappy with the supersedeas bond that the trial court set and have filed competing motions before this Court on that issue. We dispose of those motions in a separate order that is issued alongside this opinion.

No. 08-97-00582-CV, 2001 WL 28092, at *35 (Tex.App.--El Paso Jan. 11, 2001, pet. denied), *cert. granted, judgment vacated*, 538 U.S. 1054 (2003). As the writ history reflects, the United States Supreme Court granted certiorari on the limited question of whether the punitive damages awards were excessive, and the Court directed us to reconsider that question considering *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) (a case holding courts may review punitive damage award for excessiveness under the Due Process Clause). On remand, and after considering the factors set forth in *Campbell*, we reformed the punitive damages awards, finding that $300,000 was a reasonable punitive damages award against Frank individually, and that $300,000 was also a reasonable punitive damages award against Frank and Michael, jointly and severally. *See Cass v. Stephens*, 156 S.W.3d 38, 77 (Tex.App.--El Paso 2004, pet. denied). We affirmed the trial court's judgment in all other respects. *Id*. at 79. After both the Texas Supreme Court and the United States Supreme Court denied review of our decision, this Court issued its mandate.

### B. The 1999 Execution on the Judgment

In the interim, while the matter was pending on appeal, a Dallas County district court judge issued a turnover order directing the sheriff to execute on all oil and gas and mineral interests held by Frank in Dallas County to allow the Stephens Entities to begin collecting on their judgment The sheriff executed on properties held by Frank in August 1999, and Frank was given a $25,000 credit on the judgment.

### C. The 2008 Creation of the Judgment Liens

In July 2008 (after we issued our mandate affirming the trial court's final judgment as reformed) the Stephens Entities filed an abstract of judgment in several counties in Texas where the Casses owned property. *See* TEX.PROP.CODE ANN. § 52.001 (providing that the filing of an abstract of judgment "constitutes a lien on and attaches to any real property of the defendant, other

3

than real property exempt from seizure or forced sale under Chapter 41"). The abstract stated that together with court costs and prejudgment interest, as of July 1, 2008, Frank owed $13,178,325.88, and Michael owed $1,911,741.24 on the judgment. In addition, it reflected that Frank was entitled to a $25,000 credit based on the amount collected with the prior turnover order.

### D. The Later Assignments of the Judgment and Judgment Liens

In September 2016, the Stephens Entities assigned all their rights and interests in the underlying judgment and judgment liens to Patco Energy, Ltd. (Patco), of which Patricia Stephens was the general partner. Patco thereafter made two assignments significant to this appeal. First, in 2016 Patco assigned its interests in certain oil and gas leases in Upton County to Crown Rock, L.P. (Crown Rock) and Parsley DE Lonestar, LLC (Parsley). This transaction reflected that Patco had judgment liens in Upton County—based on the underlying judgment against the Casses—and Patco agreed to make a partial assignment to Crown Rock of any interest it had in the judgment liens. In exchange, Crown Rock and Parsley agreed to pay Patco $20,200,000. Thereafter, in June 2017, Crown Rock and Parsley assigned a portion of their interest in the judgment liens to Pioneer Natural Resources USA, Inc. (Pioneer) for an undisclosed sum of money.

Second, in August 2019, Patco made a partial assignment of its interest in the underlying judgment to Appellee Ferae Natura, LLC (Ferae). That assignment was limited to any interests in oil, gas and other minerals owned by the Casses, or their heirs or assignees, in Reagan County. This assignment was duly filed in the Reagan County public records.

To keep the 2008 original abstract of judgment alive as required by the Property Code, Patco filed a First Subsequent Abstract of Judgment in July 2018.[2] This abstract reflected the same

---

[2] Section 52.006 of the Texas Property Code provides that "a judgment lien continues for 10 years following the date of recording and indexing the abstract, except that if the judgment becomes dormant during that period the lien ceases to exist." TEX.PROP.CODE ANN. § 52.006 (a).

$25,000 credit to Frank, and stated that, as of June 1, 2018, with post judgment interest, Frank owed $34,896,266.54 and Michael owed $4,946,733.43 on the judgment.

### E. The Casses' Assignment of Their Interests in the Branch Lease

When the original abstract of judgment was first filed in Reagan County in 2008, the Casses owned a working interest in a mineral lease in that county, known as the Branch Lease—the subject of this appeal. In September 2018, by separate assignments, Michael and Frank transferred their interests in the Branch Lease, "below the base of the Dean Formation," to TRP Midland, LLC (TRP). Then in April 2019, TRP made a partial assignment to Hibernia of its interest in the Branch Lease, limited to a specified 80 acres of the lease.

## II. PROCEDURAL BACKGROUND

### A. Ferae Files its Foreclosure Lawsuit

In January 2020, Ferae filed its original petition seeking to foreclose its judgment lien on the Branch Lease, naming among others, Hibernia and TRP (collectively, the Defendants). The suit requested an order of sale corresponding to the interest in the lease that previously belonged to the Casses. In its petition, Ferae alleged that the Defendants had purchased their respective interests in the lease with notice of the existing judgment lien, based on the abstract of judgment on file in Reagan County.

### B. Attempt to Add Claimed Necessary Parties

After answering Ferae's lawsuit, the Defendants sought to bring the other "judgment creditors" into the case, including Patco, Crown Rock, Parsley, and Pioneer, all of whom the Defendants asserted were "necessary" parties to the lawsuit. Defendants theorized that any credit the Casses might receive from the sale of the Branch Lease would effectively cut into the other judgment creditors' ability to collect on their interest in the judgment. To that end, the Defendants

5

filed a third-party petition naming the Stephens Entities and Patco, seeking among other things, an accounting of any payments they received on the underlying judgment, and a declaration that the underlying judgment was satisfied.

### C. Ferae Moves for Summary Judgment

In May 2020, Ferae moved for summary judgment, seeking a judicial foreclosure on its lien and an order of sale of the interest in the Branch Lease that the Defendants had received from the Casses. In its motion, Ferae contended that the undisputed evidence established that it acquired the right to foreclose on the lien from Patco and that: (1) the Casses owned an 82% working interest in the Branch Lease when the original and later abstracts of judgment were filed in Reagan County; (2) the filing of the abstracts of judgment created a judicial lien on all property then-owned by the Casses in Reagan County; and (3) the Casses transferred their interests in the Branch Lease to the Defendants subject to that lien. Ferae attached several documents in support of its right to foreclose on the lien, including: (1) the reformed final judgment against the Casses and this Court's mandate affirming the judgment as reformed; (2) the abstracts of judgment filed in Reagan County; (3) the assignment of the reformed judgment from the Stephens Entities to Patco; (4) Patco's partial assignment of the reformed judgment to Ferae; and (5) the assignments made by the Casses to TRP of their interests in the Branch Lease, and the partial assignment that TRP made to Hibernia of its interests in the lease.

Relevant to this appeal, the Defendants opposed the motion arguing, among other things, that Ferae's predecessors-in-interest had received at least two payments from third parties—in addition to the $25,000 credit from the 1999 writ of execution—which the Defendants argued should have been applied as credits to the underlying judgment. They argued that the question of whether these credits should have been applied to the judgment raised a fact question about whether the judgment has been either fully or partially satisfied, which in turn, potentially

6

extinguished the judgment lien on the Branch Lease. The two payments consisted of the $20,200,000 payment that Patco received from Crown Rock and Parsley in 2016, and a $300,000 payment that the Stephens Entities received from PCORE Exploration and Production, LLC (PCORE), in exchange for a "partial release of judgment lien" in PCORE'S favor for its interest in an oil and gas lease in which Frank Cass also had an interest.

In reply, Ferae responded that the Defendants had presented no evidence to suggest that these two payments were made on the Casses' behalf or that the parties intended for them to be applied as credits to the underlying judgment. And Ferae further argued that even if the payments could be credited to the judgment, those amounts would not have been enough to extinguish the judgment. Accordingly, Ferae argued that the Defendants had failed to meet their burden of raising a question of fact on Ferae's entitlement to foreclose on the lien.

Before the summary judgment motion was heard, the Defendants counterclaimed against Ferae. The counterclaim sought an "accounting" of all monies that they or their predecessors-in-interest had received relating to any property that the Casses owned or previously owned, including any monies received from their assignments of the judgment or judgment liens to any third parties. The Defendants also sought a declaratory judgment that the underlying judgment against the Casses had been fully satisfied, and that the assignment to Ferae was therefore void and of no effect.

Ferae then filed a First Supplemental Motion for Summary Judgment, seeking dismissal of the Defendants' counterclaim as lacking merit.

### D. Patco Submits Patricia Stephens' Declaration

As part of a discovery dispute between Patco and TRP, Patco attached a declaration from its president, Patricia Stephens, revealing that her now-deceased landman had given her 16 boxes of documents that he had maintained. The documents related to various properties in which she

and Patco held an interest. While she had not reviewed the documents, she stated her belief that the boxes might contain documents relating to "properties formerly belonging to Frank Cass that are now owned by myself and/or Patco, and that are potentially responsive" to TRP's discovery requests.[3] The trial court set the discovery dispute (a motion to compel against Patco) for the same time as the hearing on Ferae's supplemental motion for summary judgment.

### E. The Trial Court Enters its Ruling and Judgment

Following its hearing, the trial court issued an order in which it found that Ferae had a valid judgment lien on the Branch Lease, and that Ferae had a right to foreclose on the lien. It also dismissed the counterclaims that Hibernia and TRP had filed against Ferae. And after finding that its order disposed of all pending claims between Ferae, Hibernia, and TRP, it granted Ferae's motion to sever its lawsuit from the claims against the other defendants, making the matter ripe for the entry of a final judgment.

Several months after the hearing, the trial court entered its final judgment and order of sale, in which it recognized that Ferae's judgment lien was based on the 1997 reformed judgment against the Casses, and calculated that with prejudgment interest, as of the date of the summary judgment hearing, Frank Cass owed $44,403,075.48, and Michael Cass owed $6,292,459.15, for a total of $50,695,534.63. The trial court considered the $25,000 credit that Frank was entitled based on the 1999 execution on his property in calculating the amounts owed. But the court did not address whether the Casses were entitled to a credit for the $20,200,000 payment that Patco had received from Crown Rock and Parsley, or for the $300,000 payment that the Stephens Entities had received from PCORE.

---

[3] TRP had served discovery on Patco requesting, among other things, that it identify and produce documents relating to the value of the judgment lien on the Branch Lease, the amounts Patco had received for any assignments of the lien, all documents it relied on in calculating its interest in the lien, documents pertaining to any other assignments it made of its interest in the underlying judgment, information relative to the 1999 execution on Frank Cass's property, and any correspondence Patco had with various entities over the lien, the Branch Lease, and the current lawsuit in general.

The court then found that Ferae could foreclose on the property in accordance with the interests set forth in its order of sale. In turn, the order of sale described those interests as follows:

The "Hibernia Interest": An 82% interest in the Branch Lease, subject to its proportionate share of lease royalties, overriding royalties and other burdens totaling 25% (thereby delivering a 61.5% net revenue interest to said 82% interest). For the East 80 acres of the West half of the San Antonio Ditch Company Survey No. 1 (A-410) for the depths below the base of the Dean Formation.

The "TRP Midland Interest": An 82% interest in the Branch Lease, subject to its proportionate share of lease royalties, overriding royalties, and other burdens totaling 25% (thereby delivering a 61.5% net revenue interest to said 82% interest) for the entirety of the Branch Lease for depths below the base of the Dean Formation. LESS AND EXCEPT the East 80 acres of the West half of the San Antonio Ditch Company Survey No. 1 (A-410)[.][4]

Hibernia filed a motion for new trial in which it argued, among other things, that the order of sale did not accurately describe its interests in the Branch Lease and provided Ferae with more relief than it was entitled to. The trial court denied the motion, together with all other post judgment motions on file.

Both Hibernia and TRP appealed from the trial court's final judgment and order of sale, but Ferae and TRP settled their dispute while the matter was pending on appeal, and TRP is no longer a party to the appeal.

## III. ISSUES ON APPEAL

The overarching theme of Hibernia's first two issues on appeal focus on whether the judgment lien on the Branch Lease was still valid, or whether it had been extinguished due to payments that the Stephens Entities and Patco had previously received. In its first issue, Hibernia contends that to resolve this question, it was necessary to join into the suit all of the past and present judgment creditors, along with the original judgment debtors, to account for any payments

---

[4] A third brother, William Cass, who was not a debtor in the underlying judgment, held the overriding royalty interest, which the parties agree was not subject to the lien.

that may have been made since the original judgment was entered in 1997. Thus, Hibernia claims the trial court erred in failing to join them in the lawsuit. In its second issue, Hibernia contends that: (1) some of Ferae's evidence on the validity of its lien was inadmissible and did not support a finding that the lien was valid; (2) the trial court lacked the authority to calculate the amount of post judgment interest owed on the judgment without expert testimony; (3) the record shows that the judgment was either fully or partially satisfied by the $20,500,000 in payments that Ferae's predecessors-in-interest previously received; and (4) the trial court should have deferred ruling on the summary judgment motion given Patricia Stephens' declaration that she had additional evidence on the issue of whether the underlying judgment was satisfied. And in its third issue, Hibernia contends that the trial court's order of sale did not correctly reflect the true nature of its interest in the Branch Lease. As explained below, we find no merit in any of Hibernia's first two issues, but do find some errors in the order of sale that we direct the trial court to address on remand in the interest of justice.

## IV. THE TRIAL COURT DID NOT ERR IN FAILING TO JOIN OTHER ENTITIES TO THE LAWSUIT

In Issue One, Hibernia contends that the trial court erred by not joining as necessary parties either the original judgment debtors (the Casses) or the other judgment creditors, both past and present, in the lawsuit. We consider each category of potential parties separately and conclude that neither the original judgment debtors nor the other judgment creditors were necessary parties to Ferae's foreclosure suit.

### A. Standard of Review and Applicable Law

We review a trial court's rulings on issues on joinder of parties for an abuse of discretion. *See Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910–11 (Tex. 2017). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules

10

or principles." *Id*., at 911, *quoting Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

In general, issues of joinder are governed by Rule 39 of the Texas Rules of Civil Procedure, which provides that:

> "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

TEX.R.CIV.P. 39(a). The rule further provides that if such a party has not yet been joined, "the court shall order that he be made a party." *Id.* Although the rule contemplates that certain persons "shall" be joined, there is no "precise formula for determining whether a particular person falls within its provisions." *Cooper v. Texas Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974). The Texas Supreme Court has further recognized that "it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined." *Id.* In other words, a failure to join an indispensable party will rarely render a judgment void. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (per curiam).

### B. Failure to Join the Casses as Judgment Debtors

On appeal, Hibernia contends that the trial court erred by failing to join the original judgment debtors (the Casses) in the current lawsuit. But Hibernia did not raise this issue in the trial court, and instead, only sought to join the judgment *creditors* in the suit. In general, when a party fails to raise a joinder issue in the trial court, the issue is waived for appellate review. *See Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam) (defendants could not be heard to complain for the first time on appeal that an entity was an indispensable party); *see also Brooks*

11

*v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004) (respondent had the opportunity to bring up joinder, but waived it by not raising it in the trial court), *citing* TEX.R.APP.P. 33.1 (as a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion . . ."). There are limited instances, however, in which the nonjoinder of a person or entity constitutes "fundamental" error that may be raised for the first time on appeal. *See Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex.App.-- Houston [1st Dist.] 1991, no writ) ("The failure to join a jurisdictionally indispensable party constitutes fundamental error, which an appellate court is bound to notice if the error is apparent from the face of the record."); *see also Tristan v. Castillo*, No. 04-05-00658-CV, 2007 WL 752203, at *3 (Tex.App.--San Antonio Mar. 14, 2007, no pet.) (mem. op.) (finding that nonjoinder of individual did not constitute fundamental error where individual's absence did not deprive the trial court of jurisdiction).

Hibernia does not directly address the question of whether the failure to join the Casses in the lawsuit was fundamental error, but we conclude that it was not. The Casses' presence in the lawsuit did not deprive the trial court of jurisdiction to grant Ferae's request to foreclose on its lien. In general, an action to foreclose on a lien is an "in rem" proceeding, and only those individuals or entities having a *current* interest in the property subject to foreclosure are necessary parties to a foreclosure suit. *See generally Pereira v. Gulf Elec. Co.*, 343 S.W.2d 334, 336 (Tex.App.--Waco 1960, writ ref'd n.r.e.) (while a former owner of property may be a proper party in a suit to foreclose a lien, the former owner is not a necessary party in an "in rem" proceeding), *citing Hartfield v. Greber*, 207 S.W. 85, 86 (Tex. [Comm'n Op.] 1918) ("It is a well-settled rule of the common law that, in a suit to foreclose a mortgage, it is not necessary to make the debtor a party to the suit, where he has parted with his interest in the property, unless a personal judgment is sought against him."); *see also*; *Demo v. Goforth*, 556 S.W.2d 128, 130 (Tex.App.--San Antonio

12

1977, no writ) (where original judgment debtors had assigned their interest in subject property to named defendants, they were not necessary parties to lawsuit that sought to foreclose on a judgment lien that encumbered the property). Here, the Casses had parted with their interests in the Branch Lease when Ferae brought its foreclosure lawsuit, and therefore, the Casses had no current interest in the property. And Hibernia has cited no authority suggesting that a person or entity with a past interest in property that is the subject of foreclosure must be joined in a foreclosure suit. To the contrary, in the only two cases that Hibernia cites, the only issue before those courts was whether the trial court properly joined all parties who had a current interest in a property dispute.[5]

We thus conclude that it was not fundamental error for the trial court to rule on Ferae's foreclosure suit in the Casses' absence.

## C. The Order of Sale was Overbroad

Hibernia, however, does point out that the trial court's order of sale impacted the Casses' rights because it states that if the proceeds from the sale of Hibernia and TRP's interests in the Branch Lease cannot satisfy the underlying judgment, the sheriff or constable who was conducting the sale was "commanded" to take said monies "or any balance remaining unpaid out of any other property of the Judgment Debtors Frank Cass and Michael Cass as in ordinary execution . . ." We agree with Hibernia that this language was improperly included in the order of sale, as Ferae never sought such relief, and instead, its suit was limited to only foreclosing on its lien on the Branch Lease.

---

[5] *See Pierce v. Blalack*, 535 S.W.3d 35, 42 (Tex.App.--Texarkana 2017, no pet.) (trial court did not abuse its discretion in ordering the joinder of all individuals with a potential interest in property that was the subject of a trespass-to-try title lawsuit); *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 181 (Tex.App.--San Antonio 2008, pet. denied) (in title dispute over real property on which a mineral estate was located, trial court did not abuse its discretion in ordering the joinder of the owners of the mineral estate and any royalty interests, as well as all lessors).

That portion of the order of sale is also problematic because the Casses are not parties. *See, e.g., Brooks*, 141 S.W.3d at 163-64 (recognizing that a trial court has no jurisdiction to declare the rights of parties who are not before it). Yet, we do not view this as an error in the trial court's failure to join the Casses as necessary parties to the lawsuit; instead, the order simply gave Ferae more relief than it requested in its pleadings. *See* Tex.R.Civ.P. 301 ("The judgment of the court shall conform to the pleadings and the nature of the cases proved . . ."); *Rouhana v. Ramirez*, 556 S.W.3d 472, 477 (Tex.App.--El Paso 2018, no pet.) ("a judgment must conform to the pleadings and proof, and a party may not be granted relief in the absence of pleadings to support it"). The remedy for this variance is not reversal of the trial court's judgment, but simply a remand to reform the order of sale. Thus, in the interest of justice, we find it appropriate to remand this matter to the trial court with directions to reform the order of sale to omit this language, and to limit its order solely to the sale of Hibernia's interest in the Branch Lease. *See generally* Tex.R.App.P. 43.6 (a "court of appeals may make any other appropriate order that the law and the nature of the case require").

### D. The Failure to Join the Other Judgment Creditors

Hibernia also claims error in the trial court's failure to join the other "judgment creditors" to the lawsuit, including Patco, Crown Rock, Parsley, and Pioneer. Each of these entities had a continuing interest in collecting on the underlying judgment and the various judgment liens that they had been assigned. Hibernia contends that because any proceeds from the sale of Ferae's judgment lien will be credited to the underlying judgment, this would reduce the amount available to the other judgment creditors in their future collection efforts.

Hibernia primarily relies on the Texas Supreme Court's opinion in *McDonough v. Cross*, 40 Tex. 251, 287 (Tex. 1874) for the proposition that "all judgment creditors should be joined in a foreclosure suit." *McDonough*, however, is inapt. It involved a situation in which two creditors

14

of an estate had an equal interest in executing on the *same* property. One creditor had obtained a lien on the property and sought to foreclose on the lien to the exclusion of the other creditor. *Id*. at 286-87. The court in *McDonough* held that both creditors were necessary parties to the foreclosure suit given their identical interest in the same property. *Id*. Here, in contrast, the other judgment creditors identified by Hibernia had either previously transferred all their interests on the judgment lien on which Ferae sought foreclosure, or never had any such interest to begin with. And the fact that some of the other judgment creditors had a past interest in the lien does not render them necessary parties to the lawsuit. To the contrary, the Texas Property Code expressly provides that a holder of a *prior* encumbrance on land or a leasehold is not a necessary party to a suit to foreclose a lien. TEX.PROP.CODE ANN. § 56.041(b). Similarly, the Texas Supreme Court has expressly held that when a party has assigned all its rights to a lien on a property, it is not a necessary party to a foreclosure lawsuit. *See Douglass v. Blount*, 67 S.W. 484, 489 (Tex. 1902). Contrary to Hibernia's claim, the presence of the other judgment creditors was unnecessary to Ferae's foreclosure suit.

We also reject Hibernia's contention that the failure to join the other judgment creditors would allow Ferae to usurp the other judgment creditor's interests in the underlying judgment. In support of this argument, Hibernia relies on *Turner v. Phelps & Co.*, 46 Tex. 251, 261 (1876) in which the court recognized that when there are multiple creditors seeking to collect on a single "security or trust fund," one creditor may not "merely by [filing] a suit in his own behalf, seize upon and appropriate to his own benefit the entire security or trust fund." In that case, however, the court dealt with multiple creditors who had an interest in the *same* property. The court recognized that it would be unfair to allow one creditor with a secured interest in the property to "appropriate to his own benefit" the proceeds from the sale of that property without considering the other creditor's rights. *Id*. But here, while the other judgment creditors had a mutual interest in collecting on the underlying judgment, none of them had any interest in Ferae's judgment lien.

15

Hibernia also presented no evidence to suggest that the sale of Ferae's interest in the Branch Lease would have impacted the rights of the other judgment creditors to collect on their share of the underlying judgment. The Casses owed over $50 million dollars on the underlying judgment, and Hibernia failed to demonstrate how a credit from the sale of its interest in the Branch Lease would have impacted the other judgment creditors' ability to collect on their proportionate share of the judgment. We thus conclude that the trial court did not err in failing to join the other judgment creditors in Ferae's foreclosure suit.

Hibernia's Issue One is overruled, subject to our directions to the trial court to modify its Order of Sale to conform to Ferae's pleadings on remand.

## V. THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT

In Issue Two, Hibernia broadly contends that: (1) Ferae failed to meet its initial burden of establishing that it had a valid, subsisting judgment lien on the Branch Lease; and (2) the record raises a fact question on whether the underlying judgment against the Casses had been either fully or partially extinguished. Each of these contentions contains multiple subparts addressing the admissibility of Ferae's summary judgment evidence.

### A. Standard of Review

"A party seeking to recover upon a claim . . . may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof." TEX.R.CIV.P. 166a(a). "In a traditional motion for summary judgment, the moving party must show that no genuine dispute exists as to any material fact such that the party is entitled to judgment as a matter of law." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021), *citing* TEX.R.CIV.P. 166a(c). We review a trial court's grant of summary judgment de novo. *Id*. at 705. In doing so, we review the evidence in the light most favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and

16

resolve any doubts against the motion. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017), *citing City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

When a party with the burden of proof moves for traditional summary judgment, that party "bears the burden to conclusively establish that it is entitled to judgment as a matter of law, notwithstanding the nonmovant's response or lack thereof." *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 258-59 (Tex. 2020) (per curiam), *citing* TEX.R.CIV.P. 166a(c). Thus, when a plaintiff moves for summary judgment, it must establish its right to summary judgment by conclusively proving all elements of its cause of action as a matter of law. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 815-16. If the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact precluding summary judgment, applying the same standard in determining whether reasonable and fair-minded jurors could differ in their conclusions considering all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam); *Nevarez v. USAA Fed. Sav. Bank*, 630 S.W.3d 416, 421–22 (Tex.App.--El Paso 2021, pet. denied).

**B. Applicable Law**

A plaintiff seeking to foreclose on a judgment lien that encumbers the defendant's property has the initial burden of establishing that its lien is valid and subsisting. *See Nichols v. Cansler*, 140 S.W.2d 254, 255-56 (Tex.App.--Fort Worth 1940, writ dism'd judgm't cor.) (in an action in rem to foreclose on a statutory judgment lien, the plaintiffs carry the burden to show that the lien is a valid, subsisting lien), *citing Boyd v. Ghent*, 64 S.W. 929, 930 (1901); *see generally* 48 TEX.JUR.3D JUDGMENTS § 551 (burden of proof is on the creditor to establish that a lien is valid and subsisting). Aside from showing that it is the owner of the judgment lien, the plaintiff must

17

establish the validity of its lien by proving that an abstract of judgment was properly recorded and indexed in the county records where the debtor's property was located. *See Murray v. Cadle Co.*, 257 S.W.3d 291, 296–97 (Tex.App.--Dallas 2008, pet. denied); *Siddiq v. Hawkins,* No. 05-09-00581-CV, 2011 WL 3211254, at *6 (Tex.App.--Dallas July 29, 2011, pet. denied) (mem. op.) ("The party seeking to foreclose a judgment lien has the burden of proving the abstract of judgment was properly recorded and indexed.").

When properly recorded and indexed, an abstract of judgment creates a judgment lien on the debtor's property in the county where the abstract is recorded, which is superior to the rights of any subsequent purchasers and lienholders. *See Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex.App.--Houston [1st Dist.] 2011, no pet.); *see also Hahn v. Love*, 394 S.W.3d 14, 20 (Tex.App.--Houston [1st Dist.] 2012, pet. denied) (a judgment lien automatically attaches to a debtor's property through a properly recorded and indexed abstract of judgment). The purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien. *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex.App.--San Antonio 2007, pet. denied).

But if the judgment debtors—or someone acting on their behalf—has paid off the underlying judgment, the now extinguished judgment also extinguishes any related judgment liens on the debtor's property. *See Equitable Tr. Co. v. Roland*, 644 S.W.2d 46, 52 (Tex.App.--San Antonio 1982, no writ) (where "lien was granted solely to satisfy the judgment appellant sought in its original action on an equipment lease, the lien was extinguished once the judgment was satisfied"). The Texas Property Code provides that the "[s]atisfaction of a judgment in whole or in part may be shown by recordation of: (1) a return on an execution issued on the judgment, or a copy of the return, certified by the officer making the return," with certain specified information contained in it, or by (2) a receipt, acknowledgment, or release signed by the party entitled to

18

receive payment of the judgment or by that person's agent or attorney of record and that is acknowledged or proven in the manner required for deeds. TEX.PROP.CODE ANN. § 52.005. Section 52.005 is not, however, the only way satisfaction of a judgment can be shown. *See Cadle Co. v. Int'l Bank of Com.*, No. 04-06-00456-CV, 2007 WL 752260, at \*3 (Tex.App.--San Antonio Mar. 14, 2007, pet. denied) (mem. op.). Thus, if there is sufficient evidence to establish that a judgment creditor accepted money in complete satisfaction and release of his judgment, that judgment will have no further force or authority. *Id.*, *citing Rapp v. Mandell & Wright, P.C.*, 123 S.W.3d 431, 434-35 (Tex.App.--Houston [14th Dist.] 2003, pet. denied); *Reames v. Logue*, 712 S.W.2d 802, 805 (Tex.App.--Dallas 1986, writ ref'd n.r.e.).

### C. Ferae Met its Burden of Establishing the Validity of its Lien

We first consider Hibernia's argument that Ferae failed to establish that it had a valid judgment lien on the Branch Lease. Hibernia contends that the evidence Ferae submitted in support of this claim was inadmissible and should not have been considered by the trial court in granting summary judgment in Ferae's favor. Ferae's evidence consisted of: (1) the assignment of the underlying judgment and all attendant judgment liens from the Stephens Entities to Patco; (2) the partial assignment from Patco to Ferae of its interests in the underlying judgment and judgment liens pertaining to all mineral properties owned or previously owned by the Casses, including those in Reagan County; (3) copies of the 2008 and 2018 abstracts of judgment that were filed in Reagan County; and (4) the assignment from the Casses to Hibernia of their interest in the Branch Lease. Ferae also provided an internet link to the Reagan County Index of property records. On appeal, Hibernia challenges the admissibility of only two of these items: (1) the document reflecting the assignment of the underlying judgment and judgment liens from the Stephens Entities to Patco, and (2) the internet link to the Reagan County Index. We consider the challenges together because they both stumble for a common reason.

19

Ferae established that the Stephens Entities transferred their interests in the underlying judgment and judgment liens to Patco with an assignment document marked as Exhibit G. Hibernia contends the document contains inadmissible hearsay. Hibernia also challenged Ferae's Exhibit K, an internet link to the Reagan County Index. Hibernia objected that this document constituted inadmissible hearsay and was not properly authenticated.

Ferae responds that Hibernia waived the admissibility issues on appeal by failing to timely object to the admission of the exhibit, and by failing to obtain a ruling on its objection in the trial court. We disagree with the timeliness argument, but agree that Hibernia never obtained a ruling on the objections. Hibernia objected to Ferae's summary judgment exhibits on the day of the summary judgment hearing. Rule 166a(c) of the Texas Rules of Civil Procedure requires the non-moving party in a summary judgment proceeding to file and serve "opposing affidavits or other written response" not later than seven days before the day of the hearing. Ferae reads this rule to include objections to summary judgment evidence. Yet the filing of an objection to a movant's summary judgment evidence is "not the same as a summary judgment response." *See Aerobic Maint. & Serv., Inc. v. First United Bank & Tr. Co.*, No. 02-08-232-CV, 2009 WL 1425179, at *5 (Tex.App.--Fort Worth May 21, 2009, no pet.) (mem. op.). So "objections to the form of summary judgment proof," which include objections based on hearsay, may be raised at "any time before the judgment is rendered." *Id.*; *see also Life Ins. Co. of Va. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 380-81 (Tex. 1978) (recognizing that a nonmovant may object to defects in the form of summary judgment evidence at any time before judgment is rendered). Thus, Hibernia's objection to the evidence was timely filed.

That said, because Hibernia's hearsay objections went only to the form of Ferae's summary judgment evidence, rather than their substance, Hibernia needed to obtain a ruling on its objection to preserve the issue for appellate review. *See Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166

(Tex. 2018) (recognizing that if a party fails to obtain a ruling on an objection to the form of its opponent's summary judgment evidence, the issue is waived for appellate review, and the evidence remains part of the summary judgment proof); *see also Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 225 (Tex.App.--El Paso 2002, no pet.) (issues relating to form defects in summary judgment evidence must be preserved by both an objection and ruling at the trial court level). *Cnty. of El Paso v. Baker*, 579 S.W.3d 686, 694 (Tex.App.--El Paso 2019, no pet.) (recognizing that a hearsay objection is one of form). The trial court's' ruling may be either in writing or in the form of the "trial court's on-the-record, unequivocal oral ruling" on the objection. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022). Although Hibernia's attorney discussed the objection to Ferae's summary judgment evidence at the summary judgment hearing and stated that he intended to file a proposed order ruling on it, the trial court did not make an express oral ruling, nor did it later issue a written ruling. Hibernia therefore failed to preserve the hearsay complaint for Exhibits G and K for our review. *See Baker*, 579 S.W.3d at 694 (appellant's hearsay arguments were waived where trial court never made a ruling on its objection).

Like hearsay, a party must also obtain a ruling on authentication objections to preserve appellate review. *See Aerobic Maint. & Serv., Inc.*, 2009 WL 1425179, at *5 n.7 (recognizing that both hearsay and "authentication" objections to a movant's summary judgment proof are objections about the form rather than substance of the evidence); *Adi v. Prudential Prop. & Cas. Ins. Co.*, No. 14-01-01001-CV, 2003 WL 22908129, at *3 (Tex.App.--Houston [14th Dist.] Dec. 11, 2003, pet. denied) (mem. op.) (recognizing that both hearsay objections and objections to the authentication of evidence are both defects of form, and that both objections are waived by a party's failure to secure rulings on them), *citing Rogers v. Cont'l Airlines, Inc.*, 41 S.W.3d 196, 200 (Tex.App.--Houston [14th Dist.] 2001, no pet.). We likewise conclude that Hibernia's authentication objection to K is waived.

21

As Hibernia raises no other challenges to the admissibility of Ferae's summary judgment evidence to support its claim that it had a valid judgment lien on the Branch Lease, we conclude that Ferae met its initial burden of establishing the validity of the lien.

### D. Hibernia Failed to Present Evidence Establishing that the Judgment Lien was Extinguished

This brings us to the crux of Hibernia's argument: whether it raised a genuine issue of material of fact for whether the underlying judgment against the Casses was partially or fully satisfied by payments that the Stephens Entities and Patco had previously received from third parties. Hibernia's argument on this issue can be broken into four categories that we discuss separately below: (1) whether the trial court erred in calculating the amount the Casses still owed on the underlying judgment without the aid of an expert witness testimony to compute the amount of post judgment interest owed; (2) whether the trial court erred in failing to apply a credit of $20,200,000 on the judgment based on the payment Patco received from Crown Rock and Parsley in Upton County; (3) whether the trial court erred in failing to apply a credit of $300,000 on the judgment based on the payment the Stephens Entities received from PCORE to extinguish a judgment lien in Reagan County; and (4) whether the trial court erred in failing to consider Patricia Stephens' declaration about the documents she had in her possession in determining whether the underlying judgment was satisfied.

*1. Ferae's waiver argument*

To begin with, Ferae argues that Hibernia did not preserve any of these issues for our review, as Hibernia's pleadings did not conform to Rule 95 of the Texas Rules of Civil Procedure. That rule provides that a defendant who raises the affirmative defense of "payment" must provide an itemized "account" of the payments he claims were made. TEX.R.CIV.P. 95 (providing that when a "[w]hen a defendant shall desire to prove payment, he shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof."). Hibernia raised as affirmative defenses the "doctrine of payment" and "the doctrine of release." It also alleged in its answer that it was entitled to an "offset" in an unspecified amount, but admittedly did not file an "account" stating the nature of the payments or the offset to which it believed it was entitled. We do not believe, however, that Rule 95's requirement of providing an itemized "account" of the payments made applies to any of Hibernia's defenses. To the contrary, this requirement appears to only apply to cases in which a plaintiff-creditor is attempting to collect on a debt owed by the defendant, and the defendant is claiming that the debt was either paid in full or in part. *See, e.g.*, *Rea v. Sunbelt Sav., FSB, Dallas, Texas*, 822 S.W.2d 370, 373 (Tex.App.--Dallas 1991, no writ) (recognizing that Rule 95 requires an affirmative plea of payment in response to plaintiff's attempt to collect on amounts owing on defendant's note to plaintiff); *Equitable Tr. Co.*, 644 S.W.2d at 53 (recognizing that Rule 95 applies to situations in which the plaintiff is suing a defendant in the capacity of a judgment creditor). Ferae was not attempting to collect on a debt owed by Hibernia, and Hibernia was not claiming that it made any payments to Ferae on any such debt. Instead, Hibernia's affirmative defenses all relate to the issue of whether third parties had made payments to Ferae's predecessors-in-interest that should have been credited against the underlying judgment, and whether this would

23

have extinguished Ferae's judgment lien. And Ferae has cited no cases for the proposition that Rule 95 applies in this circumstance.

Moreover, regardless of any pleading deficiencies, the record reflects that the parties tried this issue by consent in the summary judgment proceedings, as the parties fully briefed the question of whether there were any third-party payments that should have been credited to the underlying judgment in their summary judgment pleadings. *See Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 694 (Tex.App.--Dallas 2008, no pet.) (recognizing that "[un]pleaded issues may be tried by consent in summary judgment proceedings if no one objects"), *citing Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Roberts v. Wells Fargo Bank, N.A.*, 406 S.W.3d 702, 707 (Tex.App.--El Paso 2013, no pet.) (where record failed to demonstrate that appellee objected when appellant raised an unpleaded claim in summary judgment proceedings, the claim was tried by consent); *Equitable Tr. Co.*, 644 S.W.2d at 52–53 (where parties argued the issue of payment at trial, and payment was conceded by defendant's counsel, the issue was tried by consent). Accordingly, the issue of whether the judgment was satisfied by the third-party payments was before the trial court in the summary judgment proceedings, and we will therefore consider the issue on appeal. *See generally Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam) (appellate courts should hesitate to turn away claims based on waiver or failure to preserve the issue, particularly when a party sufficiently "registered" an issue for the trial court to consider).

*2. Hibernia failed to establish any error in the court's interest calculation*

We first consider Hibernia's argument that the trial court erred in calculating the amount that the Casses still owed on the underlying judgment when it computed the amount of post judgment interest without help from expert witness testimony. Hibernia contends that the trial court improperly relied on two exhibits that Ferae submitted in support of its supplemental motion

for summary judgment (Exhibits O and O-1) in which Hibernia's business manager, Stephen O'Connell, provided his proposed calculation of the amount of interest that had accrued as of the date of the summary judgment hearing. Exhibit O is O'Connell's declaration stating that based on the judgment's principal balance and accrued post judgment interest, "as of December 11, 2020, Frank Cass owes $44,403,075.48 and Michael Cass owes $6,292,459.15." In support of his calculation, O'Connell attached Exhibit O-1, which consisted of a chart showing how he computed the amount of interest for each year since the judgment was first entered in 1997. O'Connell added that in calculating the amounts owed, he considered the $25,000 credit that Frank Cass was entitled to from the 1997 execution on the judgment, but stated that, to his knowledge, Ferae had never received any payments or property from the Casses to satisfy the judgment or any of the judgment liens that it obtained from Patco. The trial court impliedly adopted O'Connell's calculation, as its final judgment used the same figures in setting forth the amounts owed by the Casses as of December 11, 2020.

Hibernia objected to Ferae's Exhibit O-1, contending that O'Connell's interest calculation violated Rule 701 of the Texas Rules of Civil Procedure, as it amounted to "an expert opinion without any disclosure of the qualification or basis for such expert opinion." On appeal, Hibernia re-urges the same claim, resulting in the trial court improperly relying on the exhibit to calculate the amount of interest owed on the judgment. This argument, however, suffers from the same problem as Hibernia's other evidence objections—the trial court never expressly ruled on the objection, and it is therefore waived. *See Seim*, 551 S.W.3d at 166.

Moreover, even if we were to consider this issue, we disagree with the proposition that the trial court could not make its own calculation, and nothing in our record shows the calculation used was wrong. The Texas Finance Code, as well as related case law, place the calculation of interest on money judgments in the hands of the trial court. The Code explains the appropriate rate

25

of interest and how it compounds. TEX.FIN.CODE ANN. §§ 304.001-007. The Texas Supreme Court has recognized that both trial courts and appellate courts have the authority to calculate the amount of interest owed on a judgment in accordance with the statutory provisions found in the Finance Code. *See, e.g.*, *Long v. Castle Texas Prod. Ltd. P'ship*, 426 S.W.3d 73, 87 (Tex. 2014) (recognizing trial court's responsibility to calculate the proper amount of post judgment interest); *Am. Paper Stock Co. v. Howard*, 528 S.W.2d 576, 577 (Tex. 1975) (per curiam) (supreme court reformed lower court's judgment to reflect the correct amount of interest owed on the trial court's judgment); *see also Mid-Century Ins. Co. of Texas v. Barclay*, 880 S.W.2d 807, 813 (Tex.App.--Austin 1994, writ denied) (holding that a trial court must "calculate post judgment interest on the total amount of damages as directed by statute"). Neither the Code nor any of the cases we have reviewed have suggested that a court must have expert witness testimony in making its calculation of post judgment interest.

And we find it significant that Hibernia has not pointed to any substantive error that it believes the trial court made in calculating the amount of post judgment interest owed on the underlying judgment. For these reasons, we find no basis for concluding that the trial court incorrectly calculated the amount owed on the final judgment.

### 3. *Hibernia failed to raise a question of fact on the issue of whether the underlying judgment was satisfied by payments from third parties*

We next consider whether Hibernia raised a fact question on whether the underlying judgment had been satisfied by payments that Ferae's predecessors-in-interest received from third parties. In general, we agree with Hibernia that if an underlying judgment is satisfied, this will extinguish any judgment lien that was based on that judgment. *See Equitable Trust Co.*, 644 S.W.2d at 52 (recognizing that a judgment lien is extinguished when the underlying judgment is satisfied). Even so, we do not believe that the evidence relating to the two payments received by

26

Ferae's predecessors-in-interest raised a question of fact on the issue of whether Ferae's judgment lien was extinguished.

a. The $20,200,000 payment based on the Brock Assignment

We first consider Hibernia's argument that the $20,200,000 payment that Patco received from Crown Rock and Parsley in September 2016 should have been credited to the underlying judgment. We agree with Ferae that the payment was not intended to serve as a credit on the underlying judgment.

The $20,200,000 payment was received in exchange for (1) Patco's agreement to transfer its interests in 1,000 acres in Upton County, and (2) Patco's partial assignment of its interests in any judgment liens in the county that might affect Crown Rocks' interests in that property. Aside from the fact that it is impossible to discern how much of this payment was intended as compensation for the partial assignment of the judgment lien—as opposed to the transfer of the 1,000 acres—any amounts Patco received for the assignment of the judgment lien could not be considered a credit on the underlying judgment. Instead, the assignment of the lien was a sale of Patco's partial interest in the underlying judgment against the Casses, as permitted by the Texas Property Code. *See generally* TEX.PROP.CODE ANN. § 12.014 (a) (establishing right of a party to sell a judgment). And in turn, the sale of a judgment (or a partial interest in a judgment) is not considered a credit on the judgment. Rather, it is intended to give the transferee the right to maintain any action that the transferor may have brought against the judgment debtors to collect on the judgment. *See Williams v. Hedrick*, 131 S.W.2d 187 (Tex.App.--Beaumont 1939, writ dism'd judgm't cor.) (a stranger to a judgment who pays to take an assignment of judgment, does not extinguish the judgment, but obtains the right to execute on the judgment); *Hadad v. Ellison*, 283 S.W. 193, 198 (Tex.App.--Beaumont 1926, no writ) (recognizing principle that a judgment is not extinguished where the judgment is paid off by a stranger to the judgment and the assignment

and transfer taken by him); *BW Vill., Ltd. v. Tricon Enterprises, Inc.*, 879 S.W.2d 205, 207-09 (Tex.App.--Houston [14th Dist.] 1994, writ denied) (recognizing that where an assignee "paid the purchase price for the assignment of the judgment interests" against landowner for unpaid taxes, the amount it paid was not meant to pay off the debtors' existing tax debt, and instead was meant to give the assignee the right to enforce the assignor's interests). In other words, rather than satisfying the judgment, an assignment keeps the judgment alive and in full force by giving the assignee the right to collect on it. *See Casray Oil Corp. v. Royal Indem. Co.*, 165 S.W.2d 244, 248 (Tex.App.--Galveston 1942), *aff'd*, 169 S.W.2d 955 (1943) (recognizing the right of an assignee of a judgment to sue to execute on the judgment against the judgment debtors); *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 169 (Tex.App.--Houston [1st Dist.] 1992, writ denied), *disapproved of on other grounds by Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998) ("An assignee may maintain in its own name any action that the assignor may have brought, and unless the assignor has retained some right or interest therein . . .").

Accordingly, the trial court did not err in disregarding the $20,200,000 payment that Patco received from Crown Rock and Parsley as a credit on the underlying judgment in calculating the amount still owed by the Casses.

### b. The $300,000 payment based on the PCORE lien release

We next consider the $300,000 payment that the Stephens Entities received from PCORE in April 2015. That payment was made in exchange for the partial release of a judgment lien that encumbered a mineral lease Frank Cass owned in Reagan County. Based on the record before us, this transaction was not a sale or assignment of the Stephens Entities' interests in the underlying judgment, but was a release of its interests in the lien itself. And, as set forth above, a judgment may be satisfied in whole or in part by a "release that is signed by the party entitled to receive

payment of the judgment or by that person's agent or attorney of record." TEX.PROP.CODE ANN. § 52.005(2); *see also Rapp*, 123 S.W.3d at 434 (a release of judgment is itself a discharge and surrender of all rights of the judgment creditor in the judgment); *Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 231 (Tex.App.--Houston [14th Dist.] 2013, pet. denied) (by signing a release of lien, creditor intended to release the full amount of the lien, but did not intend to release the remaining underlying debt it was owed).

But we need not decide whether this payment should have been credited to the underlying judgment, as nothing in the record supports a finding that the amount of that credit would have satisfied the underlying judgment or otherwise extinguished Ferae's judgment lien. As Ferae points out, when the trial court entered its Final Judgment giving Ferae the right to foreclose on its lien, the Casses owed a total of $50,695,534.63. A credit of $300,000 would have only marginally reduced that amount and would not have satisfied the underlying judgment or otherwise extinguished Ferae's judgment lien. *See generally Broadway Plan v. Ravenstein*, 364 S.W.2d 741, 744 (Tex.App.--Fort Worth 1963, writ ref'd n.r.e.) (where a judgment exists against two judgment debtors, the judgment is extinguished only when the entire amount of the judgment is paid, and therefore, "the payment of a sum less than the amount due on the judgment does not release other judgment debtors or extinguish the judgment"), *citing* 34 TEX.JUR.2d, p. 743, sec. 634; *Kirby v. Fitzgerald*, 89 S.W.2d 408, 411 (Tex. [Comm'n Op.] 1936). We thus conclude that Hibernia's evidence of this payment did not raise a question of fact that would have precluded the trial court from granting summary judgment on Ferae's foreclosure suit.

### 4. Patricia Stephens' declaration did not raise a question of fact

Finally, we consider Hibernia's argument that Patricia Stephens' declaration raised a question of fact on the issue of whether the underlying judgment was either partially or fully

satisfied by prior payments made by third parties that should have been credited to the judgment. We disagree with this argument as well.

Patco, as a third-party defendant, filed the declaration the day before the summary judgment hearing in response to TRP's motion to compel discovery. In the declaration, Stephens asserted that she located 16 boxes of documents previously maintained by her now-deceased landman, which could have potentially contained documents responsive to TRP's motion to compel, pertaining to payments that the Stephens Entities and Patco had received relating to the Casses' properties. At the hearing, TRP's attorney stated that he wanted to examine the documents to determine whether any reflected undisclosed payments to Patco on the judgment. However, neither TRP nor Hibernia requested a continuance to allow them time to review those documents.

On appeal, Hibernia contends that the trial court erroneously "excluded discovery" of these documents, and that more discovery was necessary to determine whether the underlying judgment had been satisfied by third-party payments Hibernia contends that without resolution of this issue, a question of fact remained on whether Ferae's judgment lien had been extinguished, and that it was therefore premature for the trial court to grant summary judgment on Ferae's foreclosure suit. Setting aside the question of whether the declaration, filed as a part of a discovery dispute can be considered part of the summary judgment record, we conclude the declaration does not raise a question of fact that precluded granting the summary judgment.

In her declaration, Stephens stated that there *might* be documents "potentially relevant" to TRP's discovery request in the boxes in her possession, but she did not specify what those documents might be or how they might affect Ferae's right to foreclose on the judgment lien. Neither TRP nor Hibernia tried to establish that there were in fact responsive documents in those boxes. Nor did they move for a continuance to give them time to review the documents to determine whether any of them might impact Ferae's right to foreclose on its lien. *See Tenneco*

30

*Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996) ("When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance."), *citing* TEX.R.CIV.P. 166a(g), 251, 252; *Gabaldon v. General Motors Corp.*, 876 S.W.2d 367, 369 (Tex.App.--El Paso 1993, no writ); *see also Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 579 (Tex.App.--El Paso 2017, pet. denied). As well, Hibernia did not request leave of court to introduce the documents into evidence after the hearing, as permitted by Rule 166a(c)— although the trial court did not issue its final judgment in the matter until April 15, 2021, several months after the December 2020 hearing. *See* TEX.R.CIV.P. 166a(c) (trial court may base its decision on affidavits and other evidence on file at the time of the hearing, "or filed thereafter and before judgment with permission of the court"). Finally, Hibernia did not complain in its motion for new trial about its inability to review those documents, or request a new trial on that basis. So although Hibernia had the opportunity to explore this issue in more depth in the trial court, Hibernia failed to do so and thereby failed to meet its burden of establishing that there were any documents in the boxes that would have shown that the underlying judgment was satisfied or that Ferae's judgment lien had been extinguished.[6]

Accordingly, for the reasons set forth above, we conclude that Hibernia did not meet its burden of establishing that a question of fact remained on the issue of whether Ferae had a valid, subsisting judgment lien on which it could foreclose.

Hibernia's Issue Two is overruled.

---

[6] Moreover, if Hibernia is complaining that it was not given an adequate opportunity to conduct discovery to review the contents of the 16 boxes of documents, we conclude that Hibernia waived that issue by failing to raise it in the trial court. *See, e.g.*, *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 412 (Tex.App.--Corpus Christi 1999, no pet.) ("Like most other rights, in order to complain on appeal of a trial court's failure to allow further discovery . . . the plaintiff must request it from the trial court."), *citing* TEX.R.APP.P. 33.1.

## VI. The Final Judgment Correctly Reflect Ferae's Proportonate Interests in the Branch Lease

In Issue Three, Hibernia contends that the trial court's order of sale misstated, or is at least ambiguous, in describing the nature of Ferae's interests in the Branch Lease, as it ignored a "third party's working interest." Hibernia phrases this as a sufficiency of the evidence challenge and contends that there was a complete absence of any evidence to support a finding that Ferae had any right to foreclose on the third party's working interest. According to Hibernia, the judgment therefore gave Ferae more relief than it requested and more relief than that to which it was entitled. *See generally Rouhana*, 556 S.W.3d at 477 (discussing principle that a judgment must conform to the pleadings and proof). We disagree, as we find that the order of sale correctly set out Hibernia's interest in the Branch Lease.

The trial court's order of sale described the Branch Lease as "that Oil, Gas and Other Mineral Lease from Ed Guy Branch and wife, Mona Glee Branch to William G. Cass, dated March 6, 1984, and recorded in Volume 200, Page 448, Oil and Gas Records, Reagan County, Texas." It then describes Hibernia's interest to be sold as "[a]n 82% interest in the Branch Lease, subject to its proportionate share of lease royalties, overriding royalties and other burdens totaling 25% (thereby delivering a 61.5% net revenue interest to said 82% interest) for the East 80 acres of the West half of the San Antonio Ditch Company Survey No. 1 for depths below the base of the Dean Formation." According to Hibernia, this description does not account for "a 1/16 mineral interest which Hibernia received free and clear of [Ferae's] Judgment Lien by way of a completely separate oil and gas lease." Hibernia explains that this 1/16th working interest originally came from Ed and Maud Branch, who conveyed it to O.P. Becken in 1927, and that in 2019, Hibernia entered into an oil and gas lease with O.P. Becken Land and others for this 1/16th interest (the Becken Lease). Hibernia contends that the Casses never owned this 1/16th interest, and that it therefore should

have been expressly excluded from the sale. According to Hibernia, the order of sale therefore should have described the interest to be sold as a "76.8750% working interest (57.65625% net revenue interest)" in the Branch Lease.

Ferae responds by pointing out that the term, "the Branch Lease," as used in the order of sale, is a defined term that refers only to the lease conveyed in 1984 by the Branch entities to William Cass, as recorded in the Reagan County oil and gas records, a copy of which was in Ferae's summary judgment evidence. In turn, the record contains documents showing that William Cass assigned a portion of his interests in the Branch Lease to Frank and Michael Cass in 1984, with Frank and Michael each receiving a 40% interest, and a third-party receiving 2%, which was later assigned to Michael Cass in 1987. In addition, the record contains a "Stipulation of Interest" signed by all three Cass brothers, which was filed in the Reagan County records as Exhibit A to the Branch Lease, referencing both the 1984 and 1987 assignments of the lease, and reflecting that (1) Michael Cass had a 42% working interest, with a net revenue interest of 31.5%; (2) Frank Cass had a 40% working interest, with a net revenue interest of 30%; and (3) William Cass had an 18% working interest, with a net revenue interest of 19.75%. As Ferae points out, this directly corresponds to the total 82% working interest owned by the judgment debtors, and the total 61.5% net revenue interest they owned in the Branch Lease under the order of sale. As Ferae also points out, the 1/16th working interest that Hibernia and others have in the Becken Lease is completely separate from the Casses' interests in the Branch Lease. Accordingly, we agree with Ferae that the order of sale correctly stated the nature of the Casses' interest in the Branch Lease, and did not encroach on any of the interests Hibernia or other third parties may have in the Becken Lease.

We note, however, that the order of sale does not reflect that Michael and Frank have different interests in the Branch Lease, (42% and 40% respectively), which will impact the amount of credit they will each may receive on the underlying judgment upon the sale of Ferae's interest

in the lease. And this will be of importance, as the order of sale states that the sheriff or constable is to "apply the proceeds [of the sale] to the payment and satisfaction of the Reformed Final Judgment." Thus, in the interest of justice, we direct the trial court to modify the order of sale to reflect the respective interests of the two judgment debtors on remand. *See generally* TEX.R.APP.P. 43.6 (a "court of appeals may make any other appropriate order that the law and the nature of the case require").

Hibernia's Issue Three is overruled, subject to our directions to the trial court to modify its Order of Sale on remand as explained above.

## CONCLUSION

We affirm the trial court's final judgment granting summary judgment on Ferae's request to foreclose on its judgment lien on the Branch Lease, and its order directing the sale of Hibernia's interest in that lease. But we remand the matter to the district court with directions to modify its final judgment and order of sale: (1) to reflect that Ferae has settled its dispute with TRP; (2) to omit the language from the order of sale directing the sheriff or constable to execute on other property belonging to the judgment debtors in satisfaction of the underlying judgment;, and (3) to delineate the judgment debtors' respective interests in the Branch Lease, to ensure that they receive the appropriate amount of credit on the underlying judgment to which they are entitled.

JEFF ALLEY, Justice

December 20, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

34